# BERTHA L. WEHR ET AL.

## *vs.*

## THE ROLAND PARK COMPANY ET AL.

### *Covenants—Contribution to Maintenance—Suburban Development.*

Covenants, in deeds by a suburban development company to purchasers of lots, by which the lots were made liable for proportionate parts of a fund to be used for lighting and keeping in repair the streets, roads, lanes, and paths, the collection of garbage and rubbish, and the maintenance of the sewer system, *held* not to have been invalidated because Baltimore City, after the annexation thereto of that territory, and the conveyance to it by the company of the streets, roads, and sewers, undertook the repair of these latter, and also the street lighting, the covenantors having acquiesced for twenty-five years in the partial performance of these duties by the county, before the annexation, and the fund being still utilized for the repair of lanes, paths, sidewalks, and sidewalk lawns, minor repairs on the roadways, and work supplementary thereto.  pp. 391, 395.

Although as a general rule covenants in deeds imposing restrictions and charges on land are construed most liberally in favor of the covenantors, in construing these covenants as to payments to the maintenance fund, the circumstances and conditions surrounding the parties were to be considered, including the fact that the provisions were intended for the benefit, not of the grantor alone, but mainly for that of the grantees.

p. 392

A covenant by which a lot owner was to contribute to the repair of the streets could properly be regarded, in the absence of some exception or provision, as including the repair of lanes, paths, and sidewalks.  p. 396.

The "sidewalk" is usually recognized as that part of the street on each side thereof which has been arranged for foot pas-

sengers, and is not intended for use by vehicles and horsemen, and may embrace all that portion of a street from the building line to the curbing, including grass plats or parking between the walk proper and the curb. p. 396

The city is not required to ornament grass plats between the sidewalk and the curb, but it can authorize that to be done, if not an obstruction to the sidewalks, and it can require the owners to keep them in proper repair, so as to avoid suits for damages. p. 396

A covenant to contribute to the cost of the repair of sidewalks could be regarded as including the removal of ice and snow, since these, if allowed to accumulate, or to remain any length of time, cause defects in the streets which have to be repaired. p. 397

A covenant to contribute to the cost of removal of rubbish included the cost of removing snow and ice from sidewalks.

p. 397

Covenants to contribute to the cost of repairing sidewalks, and of the removal of rubbish, would include the removal, from drains and gutters, of leaves or roots, coming from what the adjacent owners are permitted to have on the sidewalks.

p. 397

*Decided June 25th, 1923.*

Appeal from the Circuit Court No. 2 of Baltimore City. (FRANK, J.).

Bill by Bertha L. Wehr and others against the Roland Park Company of Baltimore City and the Roland Park Roads and Maintenance Corporation. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Isaac Lobe Straus,* with whom was *J. Paul Schmidt* on the brief, for the appellants.

*W. Calvin Chesnut* and *W. Thomas Kemp,* with whom was *D. List Warner* on the brief, for the appellees.

BOYD, C. J., delivered the opinion of the Court.

A bill in equity was filed by Bertha L. Wehr against The Roland Park Company of Baltimore City and The Roland Park Roads and Maintenance Corporation. Afterwards Charles Willms, Michael F. McCormick and J. Douglas Freeman were made parties plaintiff and later, by leave of the court, an amended and supplemented bill was filed by the four parties against The Roland Park Company and the Maintenance Corporation. We will mean the latter in referring to the bill of complaint, unless the original one is particularly mentioned. Nearly ninety residents of Roland Park filed petitions to be made parties defendants, but we suppose that if they were granted, as the docket entries state, those defendants simply adopted the answers of the original defendants, as we do not find either the orders or their answers in the record, and they do not appear to be necessary to the decision of this case.

The Roland Park Company of Baltimore City was incorporated in 1891 and purchased a large number of acres of land, the most of which were then in Baltimore County. It proceeded to develop the land and it is sufficiently shown by uncontradicted evidence to permit us to say, without discussing the same, that it became an unusually attractive development which ranks amongst the highest to be found in this State and its reputation is well known far beyond its bounds. It is only necessary to examine the restrictions in the deeds to see that the efforts of all parties concerned were to have it a development which would be peculiarly desirable for residential purposes, and which offered more than most suburban places did at that time for the comfort, health and pro-

tection of their residents. A number of plats were made and
filed in the records of Baltimore County, the three with which
we are specially concerned being those referred to in the opin-
ion of Judge Frank, who decided the case below, as follows:
"In 1892 Plat No. 1, involving 116 acres of land, was re-
corded and the land was laid out in 427 lots. In 1901 Plat
No. 2, affecting about 52 acres, was recorded, the land being
divided into some 85 lots. In 1903 Plat No. 3, comprising
120 acres and sub-divided into 192 lots, was recorded. The
present controversy involves more particularly those three
plats, although the future of the remaining parts of Roland
Park and of Guilford is, to some extent, involved in the out-
come of this case." After referring to Plats Nos. 4a, 5 and 6
and of Guilford, giving the dates of record, the acreage and
number of lots in each, he added: "The land embraced in
all of these plats is contiguous, has a combined area of some
752 acres, and, together, constitutes the admirable real estate
development above referred to."

In a deed dated May 1, 1911, from The Roland Park Com-
pany of Baltimore City to Mrs. Wehr, one of the plaintiffs,
there was conveyed a lot on Plat No. 3. That deed contained
this provision:

"8.    That the land hereby conveyed shall be liable
annually for a proportionate amount of the cost of
lighting and keeping in repairs the roads, lanes and
paths (including sidewalks) shown on said Plat Num-
ber Three of Roland Park and said Addition thereto,
of collecting and disposing of the garbage, ashes and
rubbish on the land included in said plats, and of
maintaining the sewerage system of the land included
in said plats, which said proportionate amount was
by the aforesaid deed from the party of the first part
to the said Maintenance Corporation, fixed at one hun-
dred and eleven (111) thirty-three thousandths of the
total annual cost thereof; said sum being payable quar-
terly by the said party of the second part, her heirs
and assigns, to the said Maintenance Corporation, its

successors and assigns; provided that the amount to be so paid shall not exceed, in any one year, twenty cents per hundred square feet of the superficial area of the land hereby conveyed."

There was a proviso following the above which we have not quoted, as it is not involved in this case. Paragraph 9 of the deed contains the following:

"9.   It is distinctly covenanted and agreed between the parties hereto that all the covenants and agreements above expressed shall be held to run with and bind the land hereby conveyed, and all subsequent owners and occupants thereof, until the first day of January, in the year nineteen hundred and thirty, and the acceptance of this deed shall have the same effect and binding force upon the party of the second part, her heirs and assigns, as if the same were signed and sealed by the party of the second part; provided, however, that the covenants contained in the aforegoing paragraph numbered eight (8) shall be perpetual in their operation."

The Roland Park Company of Baltimore City conveyed to Michael F. McCormick by deed dated the 19th of October, 1896, a lot on Plat No. 1, Paragraph 8, of which deed contains the following:

"8.   And the said party of the second part does hereby agree for himself, his heirs and assigns, that after January 1st, 1898, the land hereby conveyed shall be liable annually for a proportionate amount of the cost of lighting and keeping the said streets in repair, and of maintaining the sewerage system of the land included in said Plat No. 1 of Roland Park, which said proportionate amount shall be sixty-two and one-half (62½) twenty-two thousandths of the total annual cost thereof; provided, however, that the amount to be paid shall not exceed twenty-five cents per front foot per annum."

The deeds under which Charles Willms and J. W. Free-
man claim are for lots also on Plat No. 1, and it is admitted
that the above paragraphs 8 and 9 in the Wehr deed are in
all deeds for lots in Plats Nos. 2 and 3, and that in all deeds
for lots on Plat No. 1 is Paragraph 8 above quoted from
the McCormick deed. The maximum annual tax in the case
of each of the plaintiffs is, according to the calculation of
Judge Frank, as follows: "Wehr, $22.28; McCormick,
$15.65; Freeman, $18.75, and Willms, $58.75"—the latter
including parts of two lots. The maintenance tax, as it is
spoken of in this case, and will be referred to as such, was
payable to and declared by The Roland Park Company of
Baltimore City until 1909, at which time the Roland Park
Roads and Maintenance Corporation was formed and the
former conveyed to the latter all its rights in the beds of the
highways on the various plats, the sewerage system and the
right to collect and distribute the several maintenance funds.
In 1912 The Roland Park Company succeeded to the rights
of The Roland Park Company of Baltimore City, and we
will use that name unless we have occasion to distinguish
between the two companies. Judge Frank said in his opin-
ion: "While in the early days of each plat a certain portion
of the maintenance tax had been devoted to the lighting of
the streets, Baltimore County, prior to the annexation, and
since annexation, Baltimore City, has borne the entire cost
of this lighting and no part of the maintenance fund for a
number of years has been applied to this purpose. On Octo-
ber 1st, 1921, Baltimore City took over the operation of the
sewerage system of Roland Park and, although prior to that
date this system had been maintained out of the maintenance
tax, since that date no portion of the maintenance tax has
been expended upon the sewerage system."

On the 8th of June, 1922, the Roland Park Roads and
Maintenance Corporation and The Roland Park Company
conveyed to the Mayor and City Council of Baltimore (1) all
of the rights of those companies in and to all of the streets,

roads, avenues and Park Lane on Plats Nos. 1, 2, 3 and 6 of the properties of the Roland Park Company, reserving and excepting any lanes or paths as laid out thereon (except Park Lane) and excepting certain portions of roads referred to which had been previously vacated, and subject to certain rights of other companies mentioned; (2) all of the sewers, both storm and water drains and sanitary sewers, etc.; (3) the sewerage disposal field used in connection therewith. The deed also reserves to the Maintenance Corporation the right to collect the maintenance charges and expressly states that it does not convey any rights or interests in the paths or lanes of Roland Park (except Park Lane), "which paths and lanes are separate and distinct from the streets, roads and avenues herein referred to, and which lanes in Roland Park correspond generally to what are known as alleys in the older part of Baltimore City, and the Mayor and City Council of Baltimore, by the acceptance of this deed, does not undertake or assume any obligation with regard to the upkeep and repair of said paths and lanes, which duty was assumed by The Roland Park Roads and Maintenance Corporation." It is further provided that by the acceptance of the deed, the Mayor and City Council "does not assume the duties of repair, upkeep and attention to the sidewalks and sidewalk lawns in Plats 1, 2, 3 and 6 of Roland Park, which duty was imposed upon The Roland Park Roads and Maintenance Corporation by the deeds from The Roland Park Company immediately above referred to, and nothing in this deed shall be construed to impair or affect the duty of The Roland Park Roads and Maintenance Corporation to repair and maintain and care for the said sidewalks and sidewalk lawns, and trees and shrubbery planted therein, or related thereto." The Mayor and City Council also agreed that the Maintenance Corporation "shall and does subject to all city ordinances, reserve the right to repair, maintain and upkeep said sidewalks, sidewalk lawns and trees and shrubbery and to maintain any necessary control over the same

for said purpose as fully as if this deed had not been executed."

The theory of the bill is that inasmuch as the city furnishes the lights, has taken over the streets and roads, and the sewerage, the plaintiffs are no longer under obligation to pay the maintenance tax, and the appellants also contend that The Roland Park Company or the Maintenance Corporation never did do all that they or either of them undertook to do in consideration of the payment of the tax.

The evidence is to the effect that before Roland Park was annexed to the city, Baltimore County paid or contributed to the payment of the lights and repairs of the roads and streets, and it is contended that as The Roland Park Company had failed to do what it is claimed it contracted to do, it had no right to recover the maintenance tax, regardless of other reasons which may be advanced. It is perfectly clear that the restrictions, provisions and covenants in the deeds, in so far as they affect the question with which we are now concerned, were not intended alone for The Roland Park Company, or the Maintenance Corporation, but were for the common advantage and benefit of all persons purchasing lots on these plats.

As the original bill was filed by Mrs. Wehr alone, and Plaintiffs' Exhibit No. 1 is a copy of the deed to her, we will first consider it with reference to the provisions in 8 and 9 of that deed, which are also in the other deeds for lots on Plats Nos. 2 and 3. As we have seen, the property was conveyed subject to the covenants and agreements of the grantee set out in the deed. It was agreed that the land conveyed "shall be liable annually for a proportionate amount of the cost of lighting and keeping in repair the roads, lanes and paths (including sidewalks)" shown on Plat No. 3 and the addition thereto, of collecting and disposing of the garbage, ashes and rubbish on the land included in said plats, and of maintaining the sewerage system in said plats. Al-

though the land was then in Baltimore County, it must be remembered that the local laws of that county provided for many things in connection with the roads, streets, garbage, sewerage, etc., in a way that was exceptional in the counties, as will be seen by a reference to Article 3 of the Code of Public Local Laws of 1888. For example, sections 243-249 of that article gave the County Commissioners power and authority to grade, regulate and keep in repair the footways or sidewalks on all open and traveled streets, avenues and alleys in the county, according to and in conformity with such rules and regulations as were recognized in and provided for in article 4 of Code of Public Local Laws, title, City of Baltimore, and the ordinances of the Mayor and City Council passed in conformity therewith. Provision was made for ascertaining the costs and expenses and assessing pro rata on the ground binding and fronting on said footways and sidewalks, making them a lien thereon and collecting the amounts as provided for the collection of other assessments for the opening of streets, avenues or alleys in Baltimore County. That Code was adopted before the Roland Park Company was incorporated, but the provisions were continued in substance in the re-enactment of article 3 by chapter 495 of Acts of 1908 and in the local Code of 1916 compiled by Hon. T. Scott Offutt and made evidence by chap. 16 of Acts of 1916.

We speak of such matters to explain the surroundings of the parties when the covenants involved in this case were made, for, although we are mindful that as a general rule covenants in deeds imposing restrictions and charges on lands are construed most liberally in favor of the covenantors, in construing them we must consider the circumstances and conditions which surrounded the parties, and not overlook the fact that the restrictions and provisions were not intended for the benefit of the grantor alone, but mainly for that of the grantee and those similarly situated with him, nor were the payments to be made under the maintenance

tax specially for the benefit of the grantor, but they were to be used for the benefit of the grantees.

Then while the plaintiffs seem to have been influenced in asking the relief prayed for by the fact that Roland Park is now within the corporate limits of the city, and the claim that the city is compelled to perform all that the covenants provided for, we find that the county was authorized to do most of the major things which the city is now doing, and yet for a quarter of a century or more the grantees and covenantors in those deeds had acquiesced in the Roland Park Company and the Maintenance Corporation doing practically what they are now doing excepting in so far as they have been relieved by the city in the past year or two, since the annexation of 1918. The county had been furnishing lights for the streets, and funds for the repair of roads and streets. The city has in addition taken over the sewerage system. It would be difficult to believe that the plaintiffs, or any of them, when they got their deeds, did not know what the county was doing in the way of lighting and repairing the streets, and there would seem to be only one reason for not knowing it, if they desire to inform themselves of existing conditions, and that is, utter indifference and carelessness on their part. When the holders of lots on Plats Nos. 2 and 3 agreed that the covenants in Paragraph 8 of their deeds should be perpetual in their operation, they must have known that there would be changes from time to time in a development such as Roland Park and that the money contributed by them could still be used to their great advantage, supplementing what the public authorities did. Under present conditions, when labor and materials are so much higher than when Roland Park was incorporated, they knew that the Maintenance Corporation could not pay in full for lighting, keeping up the sewerage plant and the repairing of the streets with the money it was getting, or could get at the rate fixed from the property owners on the different plats. Although the development grew and demands became greater

by reason thereof, the value of the maintenance tax has become much less. Neither The Roland Park Company nor the Maintenance Corporation covenanted to light and repair the streets, or keep up the sewerage, etc., in the event of there not being sufficient funds received through the maintenance tax. Those companies, during the times they were respectively acting, have collected the money from the lot owners on the several plats and disbursed it, but are not required to make up deficiencies. The Maintenance Corportion only had a capital stock of one hundred dollars, its officers (excepting the superintendent) and directors served without pay, and simply employed the necessary clerical and other help. It is shown that twelve out of the sixteen directors of that company are chosen by the Civic League, which is composed of residents of Roland Park, any one of whom can become a member of the league upon paying a nominal annual fee.

We have thus referred at length to the surrounding circumstances because, as JUDGE MILLER said in *Roberts* v. *Bonaparte,* 73 Md. 191, 204: "Courts, in the construction of contracts, look to the language employed, the subject matter and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and in that view they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them and so as to judge of the meaning of the words and of the correct application of the language to the things described."

When the surrounding circumstances are considered, we cannot agree with the construction placed on the covenants by the learned solicitors for the plaintiffs. The covenants are not indivisible, and because some of the major things to be done with the funds derived from the maintenance tax are now done by the city, is no sufficient reason for declaring these covenants invalid and of no effect, especially as it is

proven there are a number of things being done supplementary to the work for which the tax was agreed to be paid, and some of which are actually a part of that work, beyond question. Whether or not conditions will ever exist that will make all of this tax unnecessary, and if so, when, is not for the court to predict, but this record utterly fails to satisfy us that such conditions are now present.

The maximum to be paid is fixed, and when it is shown that more is collected than can be properly used under the covenants, the time for reduction may then properly be considered. It is shown that some of the tax is still being used on the lanes and paths, sidewalks and sidewalk lawns, and for minor repairs on the roadways outside of sidewalks and sidewalk lawns. The lanes and paths, sidewalks and sidewalk lawns were expressly excepted from the deed to the Mayor and City Council of Baltimore. This is not simply a question between the grantor and its grantees, as to whether there was a dedication, but the public authorities cannot be compelled to keep the lanes and paths, sidewalks, etc., in repair until they have seen fit to accept the dedication of them. In *Sanderson* v. *Baltimore,* 135 Md. 509, 520-521, JUDGE BURKE cited many cases to that effect, as did JUDGE BRISCOE in *Baltimore* v. *Canton Company,* 124 Md. 620, and in *Ogle* v. *Cumberland,* 90 Md. 59, the principle is strikingly illustrated. When such provisions are in a deed to a city as are in the deed to the Mayor and City Council of Baltimore of June 8, 1922, it would be difficult to understand how it can be said that the city was under obligations to keep those lanes, etc., in repair, and it is clear that it is not. The covenant in the Wehr deed expressly uses the term "keeping in repair the roads, lanes and paths (including sidewalks) shown on said Plat Number Three of Roland Park and said addition thereon, of collecting and disposing of the garbage, ashes and rubbish," etc., and the deeds on Plat No. 1 include "keeping the said streets in repair." There is in the Wehr deed the language which itself includes lanes, paths, side-

walks and rubbish," and while in the McCormick deed on Plat No. 1 the general term "keeping the streets in repair" is used, it would undoubtedly, in the absence of some exception or provision, include lanes, paths and sidewalks.

In 13 R. C. L. 18, par. 6, the generally accepted meaning is concisely given. It is there said, "Generically, the term 'street' includes sidewalks. More specifically, however, it has been said that what constitutes the sidewalk as contradistinguished from the street must be determined from the facts. It is usually recognized as that part of the street on each side thereof which has been arranged for foot passengers, and is not intended for use by vehicles and horsemen, and may embrace all that portion of a street from the building line to the curbing, *including grass plats or parking between the walk proper and the curb.*" (Italics ours.) As we have seen above, the City of Baltimore has the power and has passed ordinances regulating sidewalks, and while it may first repair them, in order to avoid suits for damages and for the comfort of the public using them, it ultimately requires the owners of the adjoining properties to pay for the repairs done by it, just as the county could do before the annexation of Roland Park. The city is not required to ornament the grass plots with trees, shrubbery, etc., but it can undoubtedly authorize that to be done, if not an obstruction to those having the right to use sidewalks, and it can require the owners of adjacent property to keep it in proper condition, so as to avoid suits for damages following injuries to passers-by. In *Townley* v. *City of Huntington,* 68 W. Va. 574, 70 S. E. 368, 34 L. R. A. (N. S.) 118, the Supreme Court of West Virginia said in the head notes prepared by JUDGE ROBINSON: "A space within the bounds of a city street, set apart betwen the sidewalks and the roadway for a grass plot, is a part of the street, for the neglect of the safe condition of which the city may be held liable."

In the case of *Frostburg* v. *Wineland,* 98 Md. 239, the Court granted affirmative relief to an owner of adjoining

property to prevent the municipality from cutting down a shade tree standing in or near the curb.

A good deal was said at the argument about cleaning snow off the pavement being part of the work done by the Maintenance Corporation, and the appellants contended that it did not come within the covenants. The bill was not filed to prevent what was claimed to be a diversion of the fund, and if it had been, a court of equity would not have felt justified in restraining the use of some of the money for such a purpose as cleaning off snow and ice from the sidewalks. The property owners are required by the ordinances of Baltimore to clean off the snow, and are liable to be punished if they do not. It is not only greatly to the comfort of the residents, but it is necessary for their protection, that some one clean it off. Snow and ice, if allowed to accumulate, or to remain on the streets for any length of time, do injure the streets and do cause defects in them which have to be repaired. It is not straining the meaning of the covenant to hold that cleaning the snow off the sidewalks is aiding in keeping them in repair and it certainly might well be regarded as within the meaning of the term "rubbish" in the covenants in the deeds on Plats Nos. 2 and 3. When the trees shed their leaves or limbs are broken off during storms, or occasionally a tree is blown down or the roots of trees get under the sidewalks, repairs are often necessary. So, with the drains and gutters along the sidewalks, which become filled up and obstructed by leaves, roots of trees and other things coming from what the adjacent owners are permitted by the city to have on their sidewalks, it cannot properly be said that removing such things is not within the spirit and intent of these covenants.

The construction placed on the covenants by the representatives of the covenantors for so many years can properly be taken into consideration, and it would be a narrow construction of the covenants if the use of the funds agreed to be paid was to be limited to what is expressly mentioned, in-

stead of applying it to uses evidently intended by those entering into the covenants.

We entirely agree with the conclusion of the learned judge who decided this case below, and were tempted to simply adopt his opinion in toto, instead of, as we have done, quoting freely from it. We have set out at some length the covenants made by the purchasers of lots on the respective plats, we have stated quite fully the circumstances under which they were made, and the present conditions, and we have declined to limit the construction of the covenants to such an extent as to make them useless from the beginning, and to do great injustice to those who have paid what they agreed to pay, as interpreted by their own representatives. We find no legal objection to the covenants as originally made, and no equitable ground for declaring them wholly invalid because of present conditions, and hence will affirm the decree of the lower court without further prolonging this opinion.

*Decree affirmed, the appellants to pay the costs.*