483 A.2d 1334

**CHESAPEAKE RANCH CLUB, INC.**

**v.**

**C.R.C. UNITED MEMBERS, INC., et al.**

**No. 550, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Nov. 20, 1984.

Gary A. Goldstein, Baltimore, with whom were Robert L. Gray, Robert A. Gordon and Goldstein, Rubenstein & Sher, P.A., Baltimore, on the brief, for appellant.

Richard Murray, with whom was Clyde C. Henning, Rockville, on the brief, for appellees.

Argued before WEANT, BELL, and KARWACKI, JJ.

BELL, Judge.

Chesapeake Ranch Club, Inc. (CRC) appeals from the entry of summary judgment by the Circuit Court for Calvert County which declared that property owners in a private subdivision could resign their membership in the

Chesapeake Ranch Club and cease paying membership dues.

CRC, the developer of this private subdivision, sold lots to private parties by means of a land installment contract, followed by a deed of conveyance. The sales contracts were conditioned upon approval of the purchaser's separate application for membership in the Chesapeake Ranch Club. The Club membership application contained a provision stating that the purchaser

"shall be exempt from all assessments of any nature except annual club dues not to exceed $35.00 per year, and road charges not to exceed $10.00 per year per lot".

Pursuant to the Membership Guidelines, the membership dues were "most essential ... to support the recreational and social facilities.... Therefore, Membership in the private club shall continue so long as the Member also continues to be a land holder in the subdivision." Each deed contained a covenant stating that the purchaser shall pay Chesapeake Ranch Club "a sum not to exceed $10.00 per year for each lot for construction, maintenance and repair of streets in the subdivision".

CRC retained ownership of certain amenities within the subdivision, including but not limited to marinas, bathhouses, a lodge, beach areas and social centers.[1]

Chesapeake Ranch Club United Members, Inc., a group of lot owners, brought an action for Declaratory Judgment against CRC in the U.S. District Court of Maryland requesting the Court permanently to enjoin CRC from selling or otherwise disposing of the social facilities without prior approval of the property owners as a collective body. While the District Court action was pending, CRC instituted the present action against CRC United Members, Inc., and

---

1. It is conceded in CRC's brief that it subsequently sold some of these facilities to third parties with first right of use reserved for members of the Club. The concession is accepted by appellees in their brief. The record is silent as to exactly what was sold.

others. Shortly thereafter, the Duquettes, who were defendants in the case sub judice, notified CRC that since

"[t]he amenities which were responsible for our purchasing property at Chesapeake Ranch Club no longer are available to us having been sold or otherwise done away with ... we do not see any reason for paying dues for their maintenance and availability.

Due to this fact we are hereby resigning from the Club."

In response, CRC amended their bill of complaint and asked the court to make the following declarations:

In Count I:  "A.  That an individual may, or may not, resign as a member of Chesapeake Ranch Club.

B.  That if one has a right to resign as a member of the club, then that individual still will be, or will not be, required to pay dues pursuant to that individual's contractual obligation.

C.  That all lot owners are required to pay road fees.

D.  That the alleged failure of consideration in providing 'services' is not a legal defense to the refusal to pay dues."

In Count II:  "A.  That the defendants, or any other property owners, do not have any property right in Chesapeake Ranch Club, Inc., real property.

B.  That Chesapeake Ranch Club, Inc., may sell any real property which it owns or may encumber same free and clear of any claim by any property owner who alleges a property right or equitable right of any sort whatsoever in said property."

The case came on for hearing on a Motion Raising Preliminary Objections to CRC's amended complaint. At the hearing that motion was abandoned and it was agreed that

the matter would be heard as a Motion for Summary Judgment, which was filed later that day. The court declined to address the second count because of the pending action in the U.S. District Court. CRC then requested and was granted a voluntary nonsuit as to Count II. Upon consideration of the Motion for Summary Judgment, the court ultimately ordered and declared:

"[T]hat a member of the Chesapeake Ranch Club may resign his membership in the Chesapeake Ranch Club, Inc., and terminate his obligation to the Chesapeake Ranch Club, Inc."; [2]

"[T]hat the payment for essential services to maintain ingress and egress, in and around the Chesapeake Ranch Club, Inc., which payment has been denominated as road fees, has to be made in accordance with the covenants which run with the land and are binding on the owners of the land in perpetuity";

"[T]hat the obligation to pay membership dues accrues on the first day of the fiscal year of the Chesapeake Ranch Club, Inc., and is not divisible";

"[T]hat the defense of failure of consideration to the obligation to pay membership dues is not a valid legal defense to said obligation";

"[T]hat Count Two of the Amended Declaration ... be dismissed";

"[T]hat the Amended Declaration be dismissed as to the Defendant, Louis Laforet." [3]

CRC appeals from the determination that members of the Club can resign and thereby terminate their obligation to pay dues. CRC contends that the contractual provisions which require payment of road dues and membership fees from the lot owners create an absolute duty to tender such

---

**2.** Prior to this written order, the court had dictated findings into the record. No basis for the conclusion was stated by the court as required by then Rule 18, which now appears in Rule 2–522(a) effective July 1, 1984.

**3.** Mr. Laforet was a life member of the Club. This absolved him of any obligation to pay Club dues, but still required him to pay road fees.

dues and fees and that withdrawal from membership in the Club does not excuse the aforesaid obligations. In support of this assertion, CRC cites *Wehr v. Roland Park Co.,* 143 Md. 384, 122 A.363 (1923) and several out-of-state cases. These decisions stand for the proposition that a property owner's covenant to pay a single annual fee assessed for the rendition of services such as maintenance and upkeep of streets and roadways is enforceable.

■ Further, CRC urges us to read the provisions of the court's order as being inconsistent because by holding that partial failure of consideration does not excuse one's obligation to pay dues, the court necessarily found that the contract was unassailable. Therefore, the court erred when it held a property owner could resign his or her membership in the Club and cease paying dues. We disagree. The court's rulings are not necessarily incongruous. We interpret the order to mean that a property owner may resign membership and then stop paying dues, but if he does not resign, he must still pay dues regardless of the manner or the extent to which CRC provides the various social amenities.

At the outset we note that the property owners' obligation to pay road fees for the maintenance of public ways within the subdivision and their purported obligation to retain membership and pay dues to the Club for recreational, sports and social facilities are separate and distinct. This is evidenced by: (1) the Club application for membership which delineates the two fees, requiring $35.00 per year for annual Club dues and $10.00 per year for road charges; (2) the Deed, which mentions only the property owner's obligation to pay the $10.00 per year per lot for "construction, maintenance, and repair of streets;" and (3) Mr. Laforet's application for life membership in the Club which thereafter waives the $35.00 club dues and assesses only the $10.00 per year road maintenance fee. As the trial judge stated in his oral opinion:

"the scheme of subdivision here divided the obligations to pay for public services into two parts. Those essential to ingress and egress and the maintenance of public ways and those of a purely social nature incident to recreation and the enjoyment of life. The Court has held that payment for essential services to maintain ingress and egress in the community has to be made in accordance with the covenants which run with the land and are binding on the owners of the land in perpetuity. The contract to participate in the social side, the recreational side of the development is a different proposition in the scheme of development. It is from that end of the obligation that the Court has said in the past that we thought that a person could resign." [4]

■ Neither party disputes the fact that covenants or contractual provisions requiring assessments for the maintenance of roads in the subdivision "run with the land" and therefore are binding on property owners regardless of membership in the Club. *Wehr v. Roland Park Co., supra.*

The question in this case, however, is whether the $35.00 fee assessed for membership in the Club is binding on each property owner in the subdivision. Although CRC urges us to lump the road maintenance fees and the membership dues together, these fees are separate; therefore, the road assessments are irrelevant to this particular issue. To address the disputed question, we first consider whether a promise to pay membership dues for the use of social and recreational facilities is a binding obligation on a property owner by virtue of his owning property; in other words, does this covenant "run with the land," then, we will consider whether a property owner can be forced to pay such dues by virtue of the Club membership contract. If the membership fees run with the land, then they will be binding upon all property owners for as long as they own the land.

---

4. The trial judge had apparently ruled on this very question in a prior case.

"The test whether a covenant will or will not run with the land depends not so much on whether it is to be performed on the land itself as on whether it tends directly or necessarily to enhance its value or render it more beneficial or convenient to those by whom it is owned or occupied. Those covenants that are generally held to run with the land and to inure to the benefit of the assignee are such as ordinarily affect the land itself and confer a benefit on the grantor." (footnotes omitted) 20 Am. Jur.2d *Covenants* § 35 (1965 Cum.Supp.1983); *See also Whalen v. Baltimore and Ohio R. Co.*, 108 Md. 11, 69 A. 390 (1908).

Furthermore, "[i]t is necessary that this effect should be had upon the legal relations of the parties as owners of the land in question and not merely as members of the community in general, such as taxpayers, or owners of other land, in order that the covenant may run." 1 Tiffany, Law of Real Property § 126 n. 55 (3rd ed. 1939) quoting Clark, Real Covenants and Other Interests Which Run With Land 76 (2d ed. 1947).

■ Applying the above test to the obligation to pay membership dues for the use of recreational and social facilities, we hold that the promise to pay such dues does not run with the land. The amenities involved herein do not "touch and concern" the land nor do they necessarily increase the value of the individual lots. Rather, they affect the value of the community as a whole. Property owners do not need to use "social facilities". On the other hand, the lot owners must utilize the roads as a means of ingress and egress from their respective homes and thus should be required to pay for their maintenance.

Having determined that the obligation to pay membership dues does not "run with the land," we turn to the question of whether the court erred in holding that appellees may

resign membership in the Club and cease paying dues based on general contract principles.

■ The trial court ruled that a member could resign. He neither elaborated on the reason for that decision nor referred to the contractual provision which required continued membership as long as one remained a property owner. The only reasonable inference from these omissions is that a member can resign for any reason or for no reason at all.

On appeal, the appellees shy away from the court's ruling, but seek to justify the decision on the ground that there was a failure of consideration. More accurately, appellees assert that a material breach of the contract occurred when CRC sold some of the amenities causing a loss of exclusive use of the facilities. This may well be so, but the record fails to disclose this to us. Admittedly the briefs of appellant and appellee mention a sale, which could have been a material breach, but we do not know whether they sold one boat slip, four tennis courts, the air park, the club house, or all the social and recreational facilities. Additionally, appellees urge that the membership dues were a premium to the owner-developer-seller and hence a sham. Appellees do not direct us to any evidence that a genuine dispute concerning a material fact existed so as to preclude entry of summary judgment.

Ordinarily, these circumstances would be dispositive. We would reverse the summary judgment, direct judgment for appellants, and conclude the case. That is not the end in this case, however, because it had an unusual history.

The only hearing before the court was on a Motion Raising Preliminary Objections. During the course of the hearing the focus changed and it became apparent that the court would rule that a lot owner could resign and stop paying dues. This was the same ruling the trial judge had made on a prior occasion in a similar case. Since the case was being decided on that basis, no facts were at issue. It was agreed that the appellant would file a Motion for Summary Judgment and an order would be submitted.

Appellees had no reason to file any opposition or set out any material facts which would impede entry of a judgment in their favor.

As so often happens, the attempt to circumvent the rules caused more problems than were solved. Had this case arisen in the normal course as contemplated, the factual issue would have been raised and ruled upon. This will of necessity have to await another day.

In conclusion we hold the road fees and membership dues were separate and distinct obligations. We further hold the property owner may not resign and be excused from further liability for the social membership fees without a legal reason that would justify rescinding the contract. We remand to the trial court to strike the entry of Summary Judgment and to proceed consistent with this opinion.

JUDGMENT REVERSED AND CASE REMANDED TO STRIKE THE ENTRY OF THE SUMMARY JUDGMENT AND TO PROCEED CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.