Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/02/2021 08:09 AM CDT

- 128 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

Equestrian Ridge Homeowners Association,
appellee, v. Equestrian Ridge Estates II
Homeowners Association, appellant.

___ N.W.2d ___

Filed January 8, 2021.    No. S-20-239.

1. **Jurisdiction: Appeal and Error.** An appellate court's review of whether the district court had subject matter jurisdiction is a question of law and, when it does not involve a factual dispute, is reviewed de novo.

2. **Judgments: Appeal and Error.** In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly erroneous.

3. **____: ____.** In a bench trial of a law action, an appellate court resolves a trial court's determination of law independently of the lower court's conclusions.

4. **Standing: Jurisdiction: Parties.** Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's exercise of its subject matter jurisdiction and remedial powers on that party's behalf.

5. **Standing: Parties.** To have standing, the plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.

6. **____: ____.** A plaintiff does not generally have standing to bring a case on behalf of a third party.

7. **Contracts: Standing: Parties.** Third-party-beneficiary theory is a common-law doctrine that allows a nonparty to a contract to enforce an interest owed by a promisor under the contract.

8. **____: ____: ____.** The fact that a third party would be better off if a contract were enforced does not give him or her standing to enforce the contract.

9. **Contracts: Parties: Intent: Proof.** To enforce a contract, a third party bears the burden of proving that he or she was an intended, not incidental, beneficiary of rights under the contract.

- 129 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

10. **Contracts: Words and Phrases.** An intended beneficiary is one whose rights and interest were apparently contemplated by the contract's language itself.

11. **Contracts: Parties: Stipulations: Intent.** To be those of an intended beneficiary, a third party's rights must appear by express stipulation or it must appear by reasonable intendment that the rights and interest of such unnamed parties were contemplated and that provision was being made for them.

12. **Contracts: Proof.** The person seeking enforcement of a contract has the burden of establishing the existence of a valid, legally enforceable agreement, consisting of an offer, acceptance, and some meeting of the minds.

13. **Contracts.** To be binding, an agreement must be definite and certain as to the terms and requirements upon its parties.

14. ____. An enforceable contract must identify the subject matter and detail the parties' essential commitments to each other.

15. **Contracts: Real Estate: Property: Words and Phrases.** The difference between an analysis based in real covenant law and one based in contract law is that contracts concern primarily personal rights and duties, while real covenants concern rights that run with property.

16. **Contracts: Real Estate.** Whereas personal contract rights are not binding on successors in interest, real covenants can be.

17. **Contracts: Real Estate: Intent.** There are generally three requirements for a covenant, whether affirmative or negative, to run with the land: (1) The grantor and the grantee must have intended that the covenant run with the land, as determined from the instruments of record; (2) the covenant must touch and concern the land with which it runs; and (3) the party claiming the benefit of the covenant and the party who bears the burden of the covenant must be in privity of estate.

18. **Contracts: Real Estate: Intent: Appeal and Error.** An appellate court determines whether the grantor and grantee of a covenant had the intent to bind successors in interest by referring to the instruments of record.

19. **Contracts: Intent.** Interpretation of instruments of record should be performed in a manner that will give effect to the true intention of the parties as expressed in the writings.

20. **Contracts: Real Estate.** As with any other contract, canons of construction are used only insofar as they are necessary to resolve an ambiguity in the text of a covenant itself.

21. ____: ____. To touch and concern the land, the object of the covenant must be annexed to, inherent in, or connected with the land.

22. ____: ____. The touch and concern requirement of a real covenant is met when the covenant affects the legal relations—the advantages and

- 130 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

the burdens—of the parties to the covenant, as owners of particular parcels of land and not merely as members of the community in general, such as taxpayers or owners of other land. The covenant must impose, on the one hand, a burden upon an interest in land, which on the other hand increases the value of a different interest in the same or related land.

23. ____: ____. The test of whether a covenant touches and concerns the land is whether it tends directly or necessarily to enhance its value or render it more beneficial or convenient to those by whom it is owned or occupied. Those covenants that are generally held to run with the land and to insure to the benefit of the assignee are such as ordinarily affect the land itself and confer a benefit on the grantor.

24. **Actions: Parties.** Privity requires, at a minimum, a substantial identity between the issues in controversy and a showing that the parties in the two actions are really and substantially in interest the same.

25. ____: ____. Privity depends upon the relation of the parties to the subject matter and not their activity in a suit relating to it after the event.

26. **Property: Parties: Words and Phrases.** Privity is a mutual or successive relationship to the same rights of property. In its broadest sense, privity is defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right or derivative interest between parties.

27. **Contracts: Parties: Assignments.** Whereas a party assigns rights under a contract, a party delegates duties.

28. **Parties: Assignments.** Parties should generally be free to assign rights and delegate duties as they see fit, subject to certain limitations.

29. **Contracts: Public Policy.** Contract duties are generally delegable unless prohibited by statute, public policy, or the terms of the contract. Contractual duties are also not delegable if they involve the personal qualities or skills of the obligor, in the absence of consent by the obligee.

30. **Contracts.** Delegation to a third party of the duty to perform under a contract requires an agreement between the obligor under the first contract and a delegate. That is, the delegate must agree to be delegated the obligor's duty.

31. ____. A delegation of duties is not itself sufficient to bind its delegate to perform the duties delegated.

32. **Contracts: Claims: Breach of Contract.** The mere delegation of a performance imposes no duty on the delegate to perform. If the delegate performs the duty, the duty is discharged. If the delegate does not perform the duty, the duty is not discharged, but any claim of the obligee for breach is against the delegating party and not against the

- 131 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

delegate. The delegate is under no duty to perform unless it has undertaken to do so.

33. **Contracts: Assignments.** Even if a delegate does not promise in so many words to perform the duty of the delegating party, a court may infer such a promise from the delegate's conduct. Thus, if a party transfers the entire contract, assigning rights as well as delegating performance, an assumption of those duties by the transferee will be inferred from the acceptance of the transfer, unless the language or the situation indicates the contrary.

34. **Equity: Estoppel: Unjust Enrichment: Contracts: Real Estate.** Implied reciprocal servitude, unjust enrichment, and equitable estoppel are theories of recovery based not on the terms of a contract, but, instead, on circumstances that demand judicial action to remedy an injustice or inequity. They are generally conceived as alternatives to enforceable covenants or provisions in a contract.

35. **Contracts: Real Estate.** An implied reciprocal servitude is created by implication when no express real covenant applies.

36. **Equity: Estoppel: Unjust Enrichment: Contracts.** Unjust enrichment and equitable estoppel claims are contract substitutes that courts apply to prevent injustice.

37. **Equity: Contracts: Real Estate.** Where a contract or real covenant itself is enforceable, its terms will not be displaced in equity.

38. **Actions: Claims: Equity: Contracts.** Although a party is permitted to allege both a claim based in contract and in equity, once the terms of the contract are found to be enforceable, those terms will generally control and supersede other equitable actions.

39. **Contracts: Appeal and Error.** When the terms of a contract are clear, an appellate court interprets the contract according to its terms' plain meaning.

40. **Contracts.** Terms of a contract that are clear are given their plain and ordinary meaning as a reasonable person would understand them.

41. ____. A contract must receive a reasonable construction and must be construed as a whole.

42. ____. If possible, effect must be given to every part of a contract.

43. ____. A court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include.

44. **Contracts: Intent.** A court should avoid interpreting contract provisions in a manner that leads to unreasonable or absurd results that are obviously inconsistent with the parties' intent.

Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

- 132 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

David L. Welch and Lisa M. Meyer, of Pansing, Hogan, Ernst & Bachman, L.L.P., for appellant.

Thomas M. Locher and Amy M. Locher, of Locher, Pavelka, Dostal, Braddy & Hammes, L.L.C., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## I. INTRODUCTION

This case concerns the cost of maintenance for a private street that connects two subdivisions to public roads. In 2010, the subdivisions' developers agreed to adopt covenants requiring the subdivisions to share maintenance costs for the private street. Both developers adopted such covenants. But in 2016, one subdivision modified its covenants to repudiate any responsibility to pay for the street's maintenance costs.

The other subdivision sued, claiming, among other things, $18,732.74 in damages. The district court found for the plaintiff subdivision. We affirm.

## II. FACTUAL BACKGROUND

Equestrian Ridge L.L.C. (ER) was a limited liability company established in 1995 by Ted Grace, individually, and Duane Dowd, individually and on behalf of his business, Dowd Grain Company, Inc. (Dowd Grain). Grace and Dowd owned adjoining 80-acre tracts of land near Gretna, Nebraska. Together the men agreed to contribute their tracts to ER and to cooperate in developing the tracts into residential subdivisions. Grace's tract, known as Equestrian Ridge Estates (ERE), would be developed first. ERE was a rectangular tract and bisected by a 1-mile stretch of 232d Street, a privately maintained street running north to south from Lincoln Road to Angus Road.

On November 20, 2004, Grace and Dowd executed a second agreement (2004 Agreement). In it, each acknowledged

- 133 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

that ER had already contracted to sell 5 of the 15 lots that had been developed in ERE. Eventually all 15 lots would be sold, each subject to the authority of an Equestrian Ridge Estates Homeowners' Association (ERE HOA). But the next step, according to the 2004 Agreement, would be to develop Dowd's tract, known as Dowd Grain Subdivision (DGS). DGS was a trapezoidal tract, located east of ERE along Shiloh Drive, which ran 2,000 feet south from Lincoln Road before turning west and ending in a dead end near the border with ERE.

Because DGS lots were only accessible by Shiloh Road, which terminated in a dead end, Grace and Dowd also determined that accessibility to DGS' lots should be improved by extending Shiloh Road past its dead end to the west, across the border with ERE. Accordingly, the 2004 Agreement stated that "in the platting and subdivision of [DGS,] there will be a connecting street [from the Shiloh Road dead end across ERE land] to 232nd Street."

To fulfill this purpose, Grace and Dowd agreed, inter alia, that:

2. Dowd Grain will, through Subdivision Agreements, Covenants, and provisions applicable to homeowner[s'] associations or any combination of the foregoing, subject [DGS] to a sharing of one third of the costs and expenses of [ER] and [ERE HOA] in the repair and maintenance of 232nd Street within [ERE]. The obligation for such sharing of costs will begin when all public improvements consisting of necessary utilities and interior streets in [DGS] have been completed. When and if Lincoln Road is paved the cost sharing shall be reduced from one third to one fourth. These costs and maintenance expenses will include road maintenance and resurfacing, maintenance and repair of the bridge at the south end of 232nd Street near Angus Road, snow removal, mowing of right-of-way and maintenance of entrances at Angus Road and Lincoln Road. . . .

- 134 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

. . . .

4. The parties agree to execute any and all documents necessary or appropriate to carry into effect the foregoing agreements.

. . . .

8. . . . Grace and his related entities agree not to object to [DGS].

9. The [ERE HOA] and each lot owner in [ERE] shall be a third-party beneficiary of this Agreement.

The 2004 Agreement was signed by Grace, individually and in his capacity as manager of ER, and by Dowd, individually and in his capacity as president of Dowd Grain.

Also in the 2004 Agreement, Grace and Dowd agreed that their cooperation in developing the tracts was complete. They liquidated ER's assets by allocating to each man ownership over several of the remaining ERE lots and granting all of DGS to Dowd. ER then dissolved in 2005.

From 2005 to 2010, Dowd developed 23 residential lots within DGS, and he renamed the subdivision Equestrian Ridge Estates II (ERE II). Shiloh Road, also known as 231st Street, was also extended west to connect with 232d Street.

On January 12, 2010, before any individual lots were sold in ERE II, Dowd, in his capacity as president of Dowd Grain, signed and recorded a "Declaration of Covenants, Conditions, Restrictions and Easements of [ERE II]" (Declaration). The Declaration purported to govern an "[ERE II] Homeowners' Association" (ERE II HOA) that had been formed by articles of incorporation filed in 2007, and it required that all future owners of the 23 lots in ERE II automatically became members of ERE II HOA upon purchase of an ERE II lot.

As relevant here, the Declaration also provided:

The powers and duties to be exercised by [Dowd Grain], and subsequently by the Board of Directors of [ERE II HOA], shall include, but shall not be limited to, the following:

- 135 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

(a) The . . . assessment for and payment of any tax liability attributable to the Common Areas and facilities, and the enforcement of the rules and regulations relating to the Common Facilities.

The costs and maintenance expenses for 232nd Street shall relate only to that portion of 232nd Street located within [ERE], including the entrances at Angus Road and Lincoln Road, and shall be in the amount of one-fourth of the costs and expenses expended by [Dowd Grain] and/or [ERE HOA] related to such matters. The costs and maintenance expenses will include road maintenance and resurfacing, maintenance and repair of the bridge at the south end of 232nd Street near Angus Road, snow removal, mowing of right-of-way and maintenance of entrances at Angus Road and Lincoln Road.

(b) The fixing, levying, collecting, abatement, and enforcement of all charges, dues, or assessments made pursuant to the terms of this Declaration or [ERE II HOA].

From 2010 to 2015, Dowd sold many of the lots within ERE II and gradually relinquished control over the subdivision. Dowd was initially a board member and was the first president of ERE II HOA, but on July 7, 2015, in his personal capacity, Dowd signed a letter titled "RESIGNATION," resigning as "an Officer and Director" of ERE II HOA. On the same day, in his capacity as president of Dowd Grain, Dowd signed a document entitled "Declarant's Release, Relinquishment and Assignment of Powers and Duties Under the Declaration of [ERE II]." The document purported to "hereby release, relinquish and assign to [ERE II HOA] any and all powers and duties of [Dowd Grain] as provided in the Declaration." The board members of ERE II HOA formally accepted Dowd's relinquishment document during the board's annual meeting on July 7. From that date forward, the ERE II HOA board managed the subdivision and, until May 24, 2016, contributed its share under the 2004 Agreement of one fourth of all maintenance costs for 232d Street.

- 136 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

Around 2014, however, a dispute formed between ERE HOA and ERE II HOA. In late 2014 or early 2015, the board of directors for ERE II HOA met to discuss major roadwork that was expected along 232d Street. ERE HOA had hired an engineering firm to provide cost estimates for repair of the street's bridge. At the meeting, ERE II HOA board members complained that when ERE HOA made repairs to 232d Street, it did so without the input of ERE II HOA. Board members for ERE II HOA objected that they only ever learned about 232d Street maintenance projects upon receiving invoices from ERE HOA, typically without any explanation about the maintenance for which they were being asked to contribute. ERE II HOA board members also expressed concern that ERE HOA did not contribute anything to the maintenance and upkeep costs of ERE II HOA's own private road, which connected Shiloh Drive to 232d Street.

Based on these complaints, in early 2015, ERE II HOA decided to amend its Declaration (Amended Declaration) to remove any requirement of ERE II lot owners to contribute to maintenance costs of 232d Street. ERE II HOA drafted the Amended Declaration, which 77 percent of lot owners in ERE II signed. Since May 24, 2016, ERE II HOA has refused to contribute to 232d Street maintenance costs. ERE HOA has paid the entire amount.

ERE HOA initiated this action on July 21, 2017. ERE HOA filed a complaint in the district court for Sarpy County seeking to declare the Amended Declaration null and void and to require ERE II HOA to pay one-fourth of maintenance costs for 232d Street pursuant to the 2004 Agreement. Specifically, ERE HOA alleged seven theories for recovery: breach of contract, breach of express covenant, breach of implied restrictive covenant, unjust enrichment, equitable estoppel, specific performance, and declaratory judgment. The parties agreed to try the case to the court and stipulated to certain facts.

On February 20, 2020, after a bench trial, the district court entered judgment for ERE HOA. It found that ERE II HOA was a successor in interest to Dowd and DGS and that as

- 137 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

such, ERE II HOA was bound by the 2004 Agreement. The district court also found that the 2004 Agreement's requirement that Dowd and DGS contribute to the costs of maintaining 232d Street was given effect by Dowd's adoption of the Declaration. The district court also found that members of ERE II HOA had purchased their lots subject to the Declaration, with constructive notice of its covenant requiring contribution for maintenance costs of 232d Street. Thus, the district court held that ERE HOA "prevail[ed] on most, if not all[,] of the theories set forth in the Complaint."

ERE HOA was awarded $18,732.74 in damages for its past due share of 232d Street maintenance costs. Additionally, the district court ordered ERE II HOA to continue contributing its share of costs for 232d Street maintenance and to not again repudiate its obligation to contribute.

ERE II HOA filed a timely notice of appeal.[1]

## III. ASSIGNMENTS OF ERROR

ERE II HOA assigns, consolidated and restated, that the district court erred in (1) finding that the 2004 Agreement was enforceable against ERE II HOA, a nonparty to that agreement; (2) finding that ERE II HOA breached its duty under the 2004 Agreement to contribute to 232d Street maintenance costs; and (3) awarding damages, specific performance, and declaratory relief to ERE HOA.

## IV. STANDARD OF REVIEW

[1] An appellate court's review of whether the district court had subject matter jurisdiction is a question of law and, when it does not involve a factual dispute, is reviewed de novo.[2]

[2,3] In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly

---

[1] See Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2018).

[2] See *State ex rel. Malone v. Baldonado-Bellamy*, 307 Neb. 549, 950 N.W.2d 51 (2020).

- 138 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

erroneous.[3] In contrast, when reviewing determinations of law, an appellate court resolves the questions independently of the lower court's conclusions.[4]

## V. ANALYSIS

At its heart, this is a contract dispute that also involves real covenants. ERE HOA claims that ERE II HOA was bound by, and breached, a provision in the 2004 Agreement requiring it to contribute to 232d Street maintenance costs; ERE II HOA disagrees.

### 1. STANDING

As an initial matter, before considering the merits of ERE II HOA's assignments of error, we must determine whether ERE HOA had standing to bring an action to enforce the 2004 Agreement.[5]

[4-6] Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's exercise of its subject matter jurisdiction and remedial powers on that party's behalf.[6] To have standing, the plaintiff must have some legal or equitable right, title, or interest in the subject matter of the controversy.[7] A plaintiff does not generally have standing to bring a case on behalf of a third party.[8]

ERE HOA's suit here is based on the 2004 Agreement, a contract to which it was not a named party. Indeed, the 2004 Agreement was signed by only two persons: Grace,

---

[3] See *State ex rel. BH Media Group v. Frakes*, 305 Neb. 780, 943 N.W.2d 231 (2020).

[4] See *Nolasco v. Malcom*, 307 Neb. 309, 949 N.W.2d 201 (2020).

[5] *First State Bank Neb. v. MP Nexlevel*, 307 Neb. 198, 948 N.W.2d 708 (2020).

[6] *Id.*

[7] *Id.* See, also, Neb. Rev. Stat. § 25-301 (Reissue 2016).

[8] *First State Bank Neb., supra* note 5.

- 139 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

individually and in his capacity as manager of ER, and Dowd, individually and in his capacity as president of Dowd Grain. Still, ERE HOA contends it has standing to bring this action as a third-party beneficiary under the 2004 Agreement.

[7-9] Third-party-beneficiary theory is a common-law doctrine that allows a nonparty to a contract to enforce an interest owed by a promisor under the contract.[9] We have strictly construed who may enforce a contract as a third-party beneficiary.[10] The fact that a third party would be better off if a contract were enforced does not give him or her standing to enforce the contract.[11] Rather, to enforce a contract, the third party bears the burden of proving that he or she was an intended, not incidental, beneficiary of rights under the contract.[12]

[10,11] An intended beneficiary is one whose rights and interest were apparently contemplated by the contract's language itself.[13] This generally means that the third party's rights must appear by express stipulation or it must appear by reasonable intendment that the rights and interest of such unnamed parties were contemplated and that provision was being made for them.[14]

Here, it appears that ERE HOA's third-party rights as an intended beneficiary were expressly recognized within the text of the 2004 Agreement. Despite its execution between Grace and Dowd, the 2004 Agreement stipulated that ERE HOA "shall be a third-party beneficiary of this Agreement."

---

[9] See, generally, E. Allan Farnsworth, Contracts §§ 10.1 to 10.6 (4th ed. 2004); 13 Richard A. Lord, A Treatise on the Law of Contracts by Samuel Williston § 37:1 et seq. (4th ed. 2013).

[10] *Podraza v. New Century Physicians of Neb.*, 280 Neb. 678, 789 N.W.2d 260 (2010).

[11] *Marcuzzo v. Bank of the West*, 290 Neb. 809, 862 N.W.2d 281 (2015).

[12] *Western Ethanol Co. v. Midwest Renewable Energy*, 305 Neb. 1, 938 N.W.2d 329 (2020).

[13] *Id.*

[14] *Podraza, supra* note 10.

- 140 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

We view this as an express stipulation of ERE HOA's rights as an intended third-party beneficiary. Accordingly, we find that ERE HOA met its burden of showing standing to bring this action.

## 2. ENFORCEMENT OF 2004 AGREEMENT

Next, we consider the merits of ERE II HOA's first assignment of error. ERE II HOA assigns that the district court erred in finding that the 2004 Agreement could be enforced against ERE II HOA, a nonparty to the agreement. Alternatively, even if the 2004 Agreement could be enforced against it, ERE II HOA assigns that the district court erred in finding that ERE II HOA had breached that agreement.

[12-14] The rules for enforcement of any contract are familiar: The person seeking enforcement of the contract has the burden of establishing the existence of a valid, legally enforceable agreement, consisting of an offer, acceptance, and some meeting of the minds.[15] To be binding, the agreement must be definite and certain as to the terms and requirements upon its parties.[16] It must identify the subject matter and detail the parties' essential commitments to each other.[17]

The parties here do not dispute that under these familiar rules of contract law, the 2004 Agreement was binding—at least as between Grace and Dowd, the parties named in the agreement. But ERE II HOA was not named as a party to the 2004 Agreement. Thus, ERE II HOA contends that the 2004 Agreement, including its requirement to contribute to 232d Street maintenance costs, could not bind ERE II HOA. At ERE HOA's urging, however, the district court held that ERE II HOA was bound to contribute to 232d Street maintenance costs under the 2004 Agreement. We agree.

---

[15] See *Acklie v. Greater Omaha Packing Co.*, 306 Neb. 108, 944 N.W.2d 297 (2020).

[16] See *id.*

[17] See *id.*

- 141 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

### (a) Successor in Interest
### to Real Property

While the district court held that ERE HOA prevailed "on most, if not all of the [seven] theories [of recovery] set forth in the Complaint," the district court's analysis implicitly focused on the real property law of real covenants. It emphasized that ERE II HOA "[was] a successor in interest of [DGS] and, as such, [was] bound by [the covenant at issue in the 2004 Agreement,] which runs with the land in perpetuity." A "successor in interest" is defined as one "who follows another in ownership or control of property . . . retain[ing] the same rights as the original owner, with no change in substance."[18]

[15,16] The difference between an analysis based in real covenant law and one based in contract law is that contracts concern primarily personal rights and duties, while real covenants concern rights that run with property.[19] Whereas personal contract rights are not binding on successors in interest, real covenants can be.[20]

The general rules governing the running of covenants with land are rooted in English common law.[21] Therein, it was first stated that for a covenant to run with the land, it must touch and concern the land and expressly bind assignees.[22]

[17] Under the modern rule, there are generally three requirements for a covenant, whether affirmative or negative, to run with the land: (1) The grantor and the grantee must have intended that the covenant run with the land, as determined from the instruments of record; (2) the covenant must touch and concern the land with which it runs; and (3) the party claiming the benefit of the covenant and the party

---

[18] Black's Law Dictionary 1732 (11th ed. 2019). Accord 73 C.J.S. *Property* § 59 (2014).

[19] *Regency Homes Assn. v. Egermayer*, 243 Neb. 286, 498 N.W.2d 783 (1993).

[20] See *id.* See, also, 21 C.J.S. *Covenants* § 6 (2016).

[21] *Regency Homes Assn., supra* note 19.

[22] *Id.* (citing *Spencer's Case*, 5 Co. Rep. 16 a, 77 Eng. Rep. 72 (1583)).

- 142 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

who bears the burden of the covenant must be in privity of estate.[23] We review whether each requirement, in turn, has been met here.

### (i) Intent to Bind

[18-20] The first requirement for a real covenant to run with the land is that its original grantor and grantee must have intended for it to bind successors in interest.[24] We determine whether the grantor and grantee had this intent by referring to the instruments of record.[25] Interpretation of such documents should be performed in a manner that will give effect to the true intention of the parties as expressed in the writings.[26] As with any other contract, canons of construction are used only insofar as they are necessary to resolve an ambiguity in the text itself.[27]

Under the plain terms of the 2004 Agreement, we find it apparent that Grace and Dowd intended to sell their subdivision lots soon, while still subjecting those lots to various covenants, including the requirement to contribute to 232d Street maintenance costs. It was contemplated that these covenants would bind lot owners in the future. For example, the covenant at issue was expressed in the future tense: "Dowd Grain will, though Subdivision Agreements, Covenants, and provisions applicable to homeowner[s'] associations or any combination of the foregoing, subject [DGS] to a [232d Street cost] sharing" requirement. At the time the document was executed, no covenants, declarations, or homeowners' associations had yet been established on either ERE or ERE II, yet the above-quoted provision plainly anticipated them.

In addition, the next three sentences in the 2004 Agreement likewise showed that Grace and Dowd intended to bind

---

[23] See *Brick Development v. CNBT II*, 301 Neb. 279, 918 N.W.2d 824 (2018).

[24] See *id.*

[25] See *id.*

[26] *Standard Meat Co. v. Feerhusen*, 204 Neb. 325, 282 N.W.2d 34 (1979).

[27] *Id.*

- 143 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

persons owning subdivision lots in the future to the require-
ment to contribute to 232d Street maintenance costs. First, the
obligation of Dowd's subdivision to pay "will begin" when
the subdivision's public utilities and streets were completed;
second, if Lincoln Road was paved, "the cost sharing shall
be reduced from one third to one fourth"; and third, the costs
Dowd's subdivision would be required to pay "will include"
road maintenance, resurfacing, maintenance and repair of a
bridge, snow removal, and mowing. Each of these events
plainly had not yet occurred when the 2004 Agreement was
executed, but was anticipated to begin or continue as the sub-
divisions' lots were sold.

Reading the instruments of record in total, we view them
as stating plainly the intention of Grace and Dowd to subject
future homeowners' associations and lot owners in their subdi-
visions to the covenants of the 2004 Agreement, including the
requirement to contribute to 232d Street maintenance costs.
Thus, we find that the first element for a covenant to run with
the land is met.

### (ii) Touch and Concern

The second element for a covenant to run with the land is
that it touches and concerns the land.[28] As the law of real cov-
enants has developed, the standard for a covenant to touch and
concern the land has grown muddled. We have acknowledged,
as have other jurisdictions, that "'"[i]t has been found impos-
sible to state any absolute tests to determine what covenants
touch and concern land and what do not. The question is one
for the court to determine in the exercise of its best judgment
upon the facts of each case."'"[29]

[21] However, we generally consider a series of com-
mon factors that guide our touch and concern analysis. For

---

[28] *Brick Development, supra* note 23.

[29] *Regency Homes Assn., supra* note 19, 243 Neb. at 299, 498 N.W.2d at 791
(quoting *Neponsit P. O. Ass'n v. Emigrant I. Sav. Bank*, 278 N.Y. 248, 15
N.E.2d 793 (1938)).

- 144 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

example, "'[t]o touch and concern the land the object of the covenant must be annexed to, inherent in, or connected with, the land.'"[30]

[22] Perhaps our clearest enunciation of what it means for a covenant to touch and concern the land was a rule that we adopted from the New York Court of Appeals:

> [T]he touch and concern requirement of a real covenant is met when the covenant affects the legal relations—the advantages and the burdens—of the parties to the covenant, as owners of particular parcels of land and not merely as members of the community in general, such as taxpayers or owners of other land. The covenant must impose, on the one hand, a burden upon an interest in land, which on the other hand increases the value of a different interest in the same or related land.[31]

We consider briefly the facts of that New York Court of Appeals case insofar as they are analogous here.[32] In that case, purchasers of individual lots in a residential community had objected to being required by covenants between their predecessors in interest and the homeowners' association to contribute to the costs of maintaining roads, streets, and beaches within the development. The court rejected the lot owners' argument, holding that since the obligation to pay was tied directly to the lot owners' right to enjoyment of those roads, streets, and beaches, it touched and concerned the land.[33] As successors in interest to parties under the covenant, the lot owners were obligated to contribute.[34]

---

[30] *Id.*, 243 Neb. at 298, 498 N.W.2d at 790 (quoting *Homeowners Assoc. v. Sellers and Homeowners Assoc. v. Simpson*, 62 N.C. App. 205, 302 S.E.2d 848 (1983)).

[31] *Id.* at 299, 498 N.W.2d at 791 (citing *Neponsit P. O. Ass'n, supra* note 29).

[32] See *Neponsit P. O. Ass'n, supra* note 29.

[33] *Id.*

[34] *Id.*

- 145 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

[23] Likewise, the Maryland Court of Special Appeals held, in a case[35] relied upon by this court,[36] that a covenant to pay an annual road charge was one that touched and concerned the land while a fee to pay dues to a recreational and social club was not. The Maryland court stated that the test of whether a covenant touches and concerns the land is

"'whether it tends directly or necessarily to enhance its value or render it more beneficial or convenient to those by whom it is owned or occupied. Those covenants that are generally held to run with the land and to insure to the benefit of the assignee are such as ordinarily affect the land itself and confer a benefit on the grantor.'"[37]

The court then found that because the fee for the recreational and social club benefited the community as a whole and did not increase the value of any individual lots, it did not touch and concern those lots. "Property owners do not need to use 'social facilities.'"[38] In contrast, the annual road charge did touch and concern the land because "the lot owners must utilize the roads as a means of ingress and egress from their respective homes and thus should be required to pay for their maintenance."[39]

As in the above cases, the covenant at issue here burdens the ERE II lot owners in a manner that is plainly related to the lot owners' use of their land. The 2004 Agreement states specifically that Dowd's agreement to subject his subdivision to the requirement to contribute to 232d Street maintenance costs was in exchange for his lot owners' ability to use 232d Street for paved access to public roads.

---

[35] *Chesapeake Ranch Club v. CRC Members*, 60 Md. App. 609, 483 A.2d 1334 (1984).

[36] *Regency Homes Assn., supra* note 19.

[37] *Chesapeake Ranch Club, supra* note 35, 60 Md. App. at 616, 483 A.2d at 1337 (quoting 20 Am. Jur. 2d *Covenants* § 35 (1965 & Supp. 1983)).

[38] *Chesapeake Ranch Club, supra* note 35, 60 Md. App. at 616, 483 A.2d at 1338.

[39] *Id.*

- 146 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

When the 2004 Agreement was executed, the lot owners in ERE II were unable to leave their lots via paved public roads. Their only egress was Lincoln Road, which was unpaved. Yet Grace and Dowd acknowledged that paved access to public roads would increase the value of ERE II lots. Thus, paved road access was inherent in and connected to ERE II lot owners' use and enjoyment of their land. In exchange for the burden of being required to contribute to 232d Street maintenance costs, Dowd afforded ERE II and its future lot owners the benefit of paved access across 232d Street to public roads.

We find that the covenant in the 2004 Agreement to contribute to 232d Street maintenance costs touched and concerned the land. The second element for a real covenant is met.

### (iii) Privity of Estate

[24,25] The third element for a real covenant to run with the land is that the party claiming the covenant's benefit and the party bearing its burden must be in privity of estate.[40] In a similar context, when analyzing privity for purposes of claim preclusion, we defined privity as requiring, "at a minimum, a substantial identity between the issues in controversy and a showing that the parties in the two actions are really and substantially in interest the same."[41] That is, "[p]rivity depends upon the relation of the parties to the subject matter and not their activity in a suit relating to it after the event."[42]

[26] Although not the deciding issue in our opinion, we have also defined privity of estate in the context of express covenants.[43] We stated:

---

[40] *Brick Development, supra* note 23.

[41] *Kiplinger v. Nebraska Dept. of Nat. Resources*, 282 Neb. 237, 248, 803 N.W.2d 28, 39 (2011), *disapproved on other grounds, Banks v. Heineman*, 286 Neb. 390, 837 N.W.2d 70 (2013).

[42] *Baer v. Southroads Mall Ltd.*, 252 Neb. 518, 524, 566 N.W.2d 734, 738 (1997).

[43] See *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990).

- 147 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

Privity has also been defined as "[m]utual or successive relationship to the same rights of property. In its broadest sense, 'privity' is defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right [or] [d]erivative interest . . . between parties . . . ."[44]

Here, under these definitions, there is strong evidence that Dowd and ERE II HOA are in privity of estate. At the time Grace and Dowd executed the 2004 Agreement, they agreed to grant all of ERE II to Dowd. As ERE II's owner, Dowd agreed that before he sold the ERE II lots, he would subject them to covenants requiring the lot owners to contribute to 232d Street maintenance costs. Dowd did this via the Declaration.

ERE II HOA was formed in 2007 and assumed control of ERE II, subject to Dowd's covenants in the Declaration. ERE II HOA's board members were ERE II's lot owners, all of them having purchased their lots either from Dowd or from his grantees.

Under these facts, we find that ERE II HOA is in privity of estate with Dowd. ERE II, the same property that Dowd once owned, is now controlled by ERE II HOA and owned by ERE II HOA and ERE II's lot owners. Dowd and these lot owners are successive owners of the same land pursuant to their deeds of purchase for the lots. This satisfies the third element for a real covenant to run with the land.

ERE II HOA responds to this analysis by pointing to language in the covenant stating that Dowd agreed to subject DGS to the cost-sharing agreement. According to ERE II HOA, it cannot be a successor in interest to DGS under the 2004 Agreement because DGS was never a legal entity.

But ERE II HOA's argument here misunderstands the nature of a real covenant. A real covenant binds successive owners

---

[44] *Id.* at 838, 458 N.W.2d at 457 (quoting Black's Law Dictionary 1079 (5th ed. 1979)).

- 148 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

of land.[45] As analyzed above, ERE II HOA is in privity of estate with Dowd. ERE II HOA does not dispute that Dowd was a legal entity or that he signed the 2004 Agreement on behalf of two legal entities: himself and Dowd Grain. As ERE II HOA's predecessor in interest, Dowd subjected his land, DGS, to the covenant at issue here.

In this scenario, it matters not whether DGS was ever a legal entity. Instead, DGS is merely the description Grace and Dowd used for the land that would be subject to their covenants. ERE II HOA's argument here is without merit.

On our de novo review, we find that the three elements for a real covenant here were met. Dowd's promise in the 2004 Agreement to subject his subdivision to a requirement to contribute to 232d Street maintenance costs was a covenant that ran with the land. As such, we affirm the district court's reasoning that ERE II HOA, as the successor in interest to Dowd, was bound to contribute to 232d Street maintenance costs.

### (b) Delegate of Contractual Duty

As analyzed above, the district court's judgment rested chiefly on an analysis based in the law of real covenants. Yet another theory of recovery alleged in the complaint was that the 2004 Agreement was enforceable against ERE II HOA as a matter of simple contract law. According to ERE HOA, although ERE II HOA was not named in the 2004 Agreement, it was delegated Dowd's duties under that agreement. The district court implicitly found for ERE HOA on this theory of recovery. We agree.

[27] Although we note that, under the law of real covenants, our analysis above is itself adequate to find in favor of ERE HOA, we find it important to nevertheless address ERE HOA's contract theory as well because we wish to clarify the district court's opinion. At issue here is whether Dowd delegated to ERE II HOA his duty under the 2004 Agreement to

---

[45] See *Regency Homes Assn., supra* note 19.

- 149 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

contribute to 232d Street maintenance costs. Whereas a party assigns rights under a contract, a party delegates duties.[46]

[28,29] We have long recognized that parties should generally be free to assign rights and delegate duties as they see fit, subject to certain limitations.[47] At common law, "[c]ontract duties are generally delegable, unless prohibited by statute, public policy or the terms of the contract. Contractual duties are also not delegable if they involve the personal qualities or skills of the obligor, in the absence of consent by the obligee."[48]

[30] Delegation to a third party of the duty to perform under a contract requires an agreement between the obligor under the first contract and a delegate.[49] That is, the delegate must agree to be delegated the obligor's duty.[50] For example, in a 1988 case, *Ames v. George Victor Corp.*,[51] we found a provision in a contract sufficient to delegate an obligor's duties under a first contract to a delegate. The provision read: "'[The corporation] agrees to assume all the obligations of [the landlord] in said subleases and shall be entitled to all rentals under said subleases due and payable on July 1, 1984 and thereafter.'"[52]

Here, ERE HOA argues that Dowd delegated to ERE II HOA his duty to pay for 232d Street maintenance costs when he executed a document entitled "Release, Relinquishment

---

[46] *Burnison v. Johnston*, 277 Neb. 622, 764 N.W.2d 96 (2009). See, also, 29 Richard A. Lord, A Treatise on the Law of Contract by Samuel Williston § 74:10 (4th ed. 2003); 3 E. Allan Farnsworth, Farnsworth on Contracts § 11.1 (3d ed. 2004).

[47] See, e.g., *Union P. R. Co. v. Douglas County Bank*, 42 Neb. 469, 60 N.W. 886 (1894).

[48] 29 Lord, *supra* note 46, § 74:27 at 404. Accord *Earth Science Labs. v. Adkins & Wondra, P.C.*, 246 Neb. 798, 523 N.W.2d 254 (1994).

[49] See 29 Lord, *supra* note 46, § 74:27.

[50] See *id.*

[51] *Ames v. George Victor Corp.*, 228 Neb. 675, 424 N.W.2d 106 (1988).

[52] *Id.* at 681-82, 424 N.W.2d at 111.

- 150 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

and Assignment of Powers and Duties Under the Declaration of [ERE II].” Under the terms of that document, Dowd, on behalf of Dowd Grain, stated that he “does hereby release, relinquish and assign to [ERE II HOA] any and all powers and duties of [Dowd Grain] as provided in the Declaration.” As ERE HOA argues, this appears to state that it was Dowd’s intention to delegate all duties under the Declaration to ERE II HOA.

One of the duties named in the Declaration was the duty to contribute to 232d Street maintenance costs. Specifically, in the Declaration, Dowd stated:

The costs and maintenance expenses for 232nd Street shall relate only to that portion of 232nd Street located within [ERE], including the entrances at Angus Road and Lincoln Road, and shall be in the amount of one-fourth of the costs and expenses expended by [Dowd Grain] and/or [ERE HOA] related to such matters.

To the extent that ERE II HOA argues that such delegation was unclear or that it did not specifically mention Dowd’s duties under the 2004 Agreement, the Declaration further provides that “[a]t such time as [Dowd Grain] no longer holds title to any subdivision lot, any powers and duties not previously released or relinquished shall be deemed to have been released and relinquished.” This satisfied the requirement for an obligor under one contract to delegate his or her duties to a delegate. Thus, ERE HOA argued, and we agree, that Dowd lawfully delegated to ERE II HOA the duty to contribute to 232d Street maintenance costs.

[31,32] A delegation of duties is not itself sufficient to bind its delegate to perform the duties delegated, however. To the contrary:

The mere delegation of a performance imposes no duty on the delegate to perform. If the delegate performs the duty, the duty is discharged. If the delegate does not perform the duty, the duty is not discharged, but any claim of the obligee for breach is against the delegating party

- 151 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

and not against the delegate. The delegate is under no duty to perform unless it has undertaken to do so.[53] Similar to other areas of contract law, it is foundational that an agreement to delegate duties is not formed until it is accepted by the delegate.[54]

Here, we find strong evidence that the delegate, ERE II HOA, accepted Dowd's delegation. After Dowd executed the relinquishment letter quoted above, the board members of ERE II HOA formally accepted it during the board's annual meeting on July 7, 2015. The minutes of the meeting state as follows:

This annual meeting of the Members of [ERE II HOA] was held pursuant to the notice attached to these minutes on July 7, 2015 at 6:00 p.m. at 508 W. Angus Road, Gretna, Nebraska.

The first order of business was the acceptance of Declarant's Release, Relinquishment and Assignment of Powers and Duties under the Declaration of [ERE II]. Upon motion duly made, seconded and carried, this Release, Relinquishment and Assignment was accepted."

[33] Moreover, even if the minutes were not themselves sufficient evidence of ERE II HOA's undertaking Dowd's delegated duties, ERE II HOA's conduct thereafter provides further evidence of this undertaking. As one commentator noted:

Even if a delegate does not promise in so many words to perform the duty of the delegating party, a court may infer such a promise from the delegate's conduct. Thus, if a party transfers the entire contract, assigning rights as well as delegating performance, an assumption of those duties by the transferee will be inferred from the

---

[53] Farnsworth, *supra* note 9, § 11.11 at 723.

[54] See *Acklie, supra* note 15.

- 152 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

acceptance of the transfer, unless the language or the situation indicates the contrary.[55]

Here, ERE II HOA's conduct provides persuasive evidence that it accepted Dowd's delegation of the duty to contribute to 232d Street maintenance costs. After Dowd executed the relinquishment letter, ERE II HOA took the action commanded by the duty, writing at least three checks between March 4 and May 1, 2016, to ERE HOA for the costs of maintaining 232d Street. The checks were for the amounts of $5,500.82, $3,385.12, and $423.14. Their subject lines stated "partial payment Road Repair," "payment 2 to ERE I HOA," and "Final Road repair Payment."

On our de novo review, we find that Dowd delegated to ERE II HOA his duty under the 2004 Agreement to contribute to 232d Street maintenance costs. And ERE II HOA accepted that duty, both during its 2015 annual meeting and by its conduct thereafter. Thus, ERE II HOA, as delegate, owed Dowd's duty under the 2004 Agreement to contribute to 232d Street maintenance costs. The district court's judgment should be affirmed as a matter of contract law.

### (c) Enforcement in Equity

As an alternative to the above theories of breach based on the 2004 Agreement itself, ERE HOA also alleged three other theories of recovery based entirely in equity. Those theories were implied reciprocal servitude, unjust enrichment, and equitable estoppel. Under these theories, ERE HOA argued that even if the 2004 Agreement was not enforceable as a matter of real covenant or contract law, its covenant to contribute to 232d Street maintenance costs should still be enforced as a matter of equity.

---

[55] Farnsworth, *supra* note 9, § 11.11 at 724-25. See, also, 1 Restatement (Second) of Contracts, § 164 (1981); 3 Restatement (Second) of Contracts § 328 (1981).

- 153 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

The district court implicitly found for ERE HOA on each of these theories, and ERE II HOA assigns this was in error. We agree.

[34-36] Implied reciprocal servitude, unjust enrichment, and equitable estoppel are theories of recovery based not on the terms of a contract, but, instead, on circumstances that demand judicial action to remedy an injustice or inequity.[56] They are generally conceived as alternatives to enforceable covenants or provisions in a contract.[57] An implied reciprocal servitude is created by implication when no express real covenant applies.[58] Likewise, unjust enrichment and equitable estoppel claims are contract substitutes that courts apply to prevent injustice.[59]

[37,38] However, we have long held that where a contract or real covenant itself is enforceable, its terms will not be displaced in equity.[60] Although a party is permitted to allege both a claim based in contract and in equity, once the terms of the contract are found to be enforceable, those terms will generally control and supersede other equitable actions.[61]

As we have already held, the terms in the 2004 Agreement at issue here are enforceable against ERE II HOA as a matter of real covenant and contract law. Thus, there is no need for a contract substitute theory to apply, rendering a judgment in equity. Accordingly, we deem ERE HOA's equitable claims displaced and superseded. To the extent the district court rested its judgment on these three equitable theories, it was in error.

However, as analyzed above, the 2004 Agreement was enforceable against ERE II HOA under both the law of real

---

[56] See *DH-1, LLC v. City of Falls City*, 305 Neb. 23, 938 N.W.2d 319 (2020).

[57] See *id.*

[58] *Walters v. Colford*, 297 Neb. 302, 900 N.W.2d 183 (2017).

[59] See, *DH-1, LLC, supra* note 56; *Brick Development, supra* note 23.

[60] See *DH-1, LLC, supra* note 56.

[61] See *id.*

- 154 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

covenants and the law of contracts. ERE II HOA's first assignment of error is without merit.

### 3. BREACH OF 2004 AGREEMENT

ERE II HOA's second assignment of error is that no breach occurred. It argues that even if it was bound by the provision in the 2004 Agreement requiring it to contribute to 232d Street maintenance costs, ERE II HOA did not breach that provision when it modified the Declaration in 2016. Rather, ERE II HOA contends, the 2004 Agreement required only that Dowd "through Subdivision Agreements, Covenants, and provisions applicable to homeowner[s'] associations or any combination of the foregoing, subject [DGS] to a sharing of one third of the costs and expenses of [ER] and [ERE HOA] in the repair and maintenance of 232nd Street within [ERE]."

According to ERE II HOA, a plain reading of this provision reveals that it imposed only a one-time duty on Dowd Grain to take action in the future to "subject" ERE II to a requirement to contribute to the maintenance costs of 232d Street. That one-time duty was activated, ERE II HOA acknowledges, "when all public improvements consisting of necessary utilities and interior streets in [DGS] have been completed."

But ERE II argues the 2004 Agreement's language neither specified for how long Dowd's duty would last nor required that it be more than a one-time duty. Thus, according to ERE II HOA, it was within its rights to amend the Declaration in accordance with its amendment procedure to repudiate its obligation for 232d Street maintenance costs. After the Declaration initially subjected ERE II to maintenance costs and thus met Dowd Grain's duty under the 2004 Agreement, Dowd's duty under the 2004 Agreement was discharged.

[39-42] When the terms of a contract are clear, we interpret the contract according to its terms' plain meaning.[62] Terms of a contract that are clear are given their plain and ordinary

---

[62] See *Kaiser v. Allstate Indemnity Co.*, 307 Neb. 562, 949 N.W.2d 787 (2020).

- 155 -

Nebraska Supreme Court Advance Sheets
308 Nebraska Reports
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

meaning as a reasonable person would understand them.[63] A contract must receive a reasonable construction and must be construed as a whole.[64] And, if possible, effect must be given to every part of a contract.[65]

[43,44] A court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include.[66] A court should avoid interpreting contract provisions in a manner that leads to unreasonable or absurd results that are obviously inconsistent with the parties' intent.[67]

By the plain meaning of the 2004 Agreement, we disagree that the covenant at issue is susceptible to the interpretation that ERE II HOA urges. Contrary to ERE II HOA's stilted interpretation of the 2004 Agreement, a natural reading of the agreement's plain language indicates that Dowd and his successors in interest would be subject to a requirement to share costs with ERE HOA for the maintenance of 232d Street. There is nothing about the verb "to subject" that makes it necessarily pertain to a one-time action, as ERE II HOA alleges. Rather, "to subject" means "[t]o make subject or bring into subjection *to* the rule, government, power, or service of a superior" or "[t]o make submissive or dependent; to bring into a state of subordination."[68]

Just as ERE II HOA alleges that the 2004 Agreement did not specify that Dowd's subjecting his subdivision to the cost-sharing requirement would not end, it also did not specify that it would end. A reasonable interpretation of the provision is that Dowd and his successors in interest would be, and would remain, subject to the cost-sharing requirement. We do not

---

[63] See *id.*

[64] *Lassalle v. State*, 307 Neb. 221, 948 N.W.2d 725 (2020).

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] "Subject," Oxford English Dictionary Online, http://www.oed.com/view/Entry/192688 (last visited Dec. 31, 2020).

- 156 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

read into the provision a stipulation that Dowd and his successors will be subject to the requirement only until they unilaterally change it, as ERE II HOA now alleges.[69]

Moreover, construing the provision at issue within the 2004 Agreement as a whole, there is strong evidence that it was intended to operate on an ongoing basis. After the sentence stating that Dowd will "subject" his subdivision to the cost-sharing requirement, it makes provisions for how that cost sharing will change as future events occur. For example, it states that if Lincoln Road is paved, Dowd's cost-sharing obligation will reduce from one third to one fourth. And it implies that cost sharing is expected to occur year after year, because it stipulates that cost sharing includes a number of future, anticipated needs annually: "road maintenance and resurfacing, maintenance and repair of the bridge at the south end of 232nd Street near Angus Road, snow removal, mowing of right-of-way and maintenance of entrances at Angus Road and Lincoln Road."

This language indicates strongly that the parties' intent was that ERE II lot owners would continue to share the costs of maintenance for 232d Street with lot owners in ERE. After all, the 2004 Agreement suggests that in exchange for this promise to contribute, Dowd received something significant: a right to connect Shiloh Drive across ERE lots to 232d Street. That right of connection did not terminate after one use, so ERE II HOA's obligation to contribute to 232d Street maintenance costs should also not be read to terminate after one use. Instead, it was breached when ERE II HOA amended its Declaration to eliminate the requirement to contribute to 232d Street maintenance costs.

This case is distinguishable from *Boyles v. Hausmann*,[70] which ERE II HOA cites for support in its brief. In *Boyles*, the issue before this court was solely whether certain restrictive

---

[69] See *Lassalle, supra* note 64.

[70] *Boyles v. Hausmann*, 246 Neb. 181, 517 N.W.2d 610 (1994).

- 157 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

covenants that a subdivision had modified by a majority vote of lot owners in the subdivision were valid. A landowner had challenged the covenants on the basis that they added new requirements to his lot.[71] We generally agreed with the lot owner, finding that the subdivision had not followed its own procedure for amending covenants.[72]

But that rule from *Boyles* is inapposite here. Whereas *Boyles* dealt solely with the validity of certain covenants executed by the homeowners' association, this case deals with both Dowd's Declaration regarding the homeowners' association ERE II HOA and the 2004 Agreement executed between Grace and Dowd. Even if we were to analyze this case under *Boyles* and conclude that ERE II HOA had properly followed its procedures for amending the Declaration, that would not affect ERE II HOA's obligation to contribute to 232d Street maintenance costs under the 2004 Agreement. ERE II HOA's argument is without merit.

As a result, we hold that not only was ERE II HOA bound by the 2004 Agreement, but that ERE II HOA breached that agreement when it amended its Declaration and refused to contribute to 232d Street maintenance costs. ERE II HOA's second assignment of error is without merit.

### 4. REMEDY

Based on the above-discussed theories of legal and equitable recovery, the district court granted ERE HOA three remedies, to wit: The district court ordered $18,732.74 in damages, a declaratory judgment that "any attempt to repudiate the obligation to contribute to the costs of upkeep and maintenance of 232nd Street without the specific notice and consent of those who are benefitted by the Covenant in [ERE] subdivision is prohibited," and specific performance to "continue to contribute to the costs of upkeep and maintenance of 232nd Street as provided for in the Covenant granted by the Declaration."

---

[71] See *id.*

[72] See *id.*

- 158 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
308 NEBRASKA REPORTS
EQUESTRIAN RIDGE v. EQUESTRIAN RIDGE ESTATES II
Cite as 308 Neb. 128

On our de novo review, we find no error in the district court's award. First, damages were awarded for ERE II HOA's past breach of contract, and ERE II HOA does not dispute that the amount awarded was reasonably certain and such as might be expected to follow the breach.[73] Second, a declaratory judgment was awarded to declare ERE HOA's rights under the 2004 Agreement.[74] And third, specific performance was awarded to require ERE II HOA to comply with its duty under the 2004 Agreement.[75]

ERE II HOA's assignment of error here is the same as before—that the 2004 Agreement was not enforceable against it and that no breach of the 2004 Agreement occurred—but we have found to the contrary. As analyzed above, the 2004 Agreement was enforceable against ERE II HOA, and ERE II HOA breached that agreement when it repudiated its duty to contribute to 232d Street maintenance costs.

Thus, we affirm the district court's award of the three remedies. ERE II HOA's third assignment of error is without merit.

## VI. CONCLUSION

The district court's order granting judgment to ERE HOA is affirmed.

AFFIRMED.

---

[73] See *TNT Cattle Co. v. Fife*, 304 Neb. 890, 937 N.W.2d 811 (2020).

[74] See *State ex rel. Wagner v. Evnen*, 307 Neb. 142, 948 N.W.2d 244 (2020). See, also, Neb. Rev. Stat. § 25-21,150 (Reissue 2016).

[75] See *Johnson v. Nelson*, 290 Neb. 703, 861 N.W.2d 705 (2015).