Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/14/2020 08:08 AM CDT

Douglas S. Bierman and James A. Hoppenstedt,
appellees and cross-appellants, v.
Brenda L. Benjamin, personally and
individually, et al., appellants
and cross-appellees.

___ N.W.2d ___

Filed May 22, 2020.    No. S-18-915.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **____: ____.** In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

3. **Contracts.** The interpretation of a contract and whether the contract is ambiguous are questions of law subject to independent review.

4. **Appeal and Error: Words and Phrases.** Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.

5. **Appeal and Error.** An appellate court may, at its option, notice plain error.

6. **Contracts.** In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.

7. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.

8. **Contracts.** When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.

9. ____. The fact that the parties have suggested opposing meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.

10. **Contracts: Evidence.** A contract found to be ambiguous presents a question of fact and permits the consideration of extrinsic evidence to determine the meaning of the contract.

Appeal from the District Court for Buffalo County: John H. Marsh, Judge. Reversed and remanded for further proceedings.

Bradley D. Holbrook and Nicholas R. Norton, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellants.

William J. Lindsay, Jr., and John A. Svoboda, of Gross & Welch, P.C., L.L.O., Kenneth F. George, of Ken George Law Office, and Luke M. Simpson, of Bruner, Frank & Schumacher, L.L.C., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

## INTRODUCTION

Plaintiffs Douglas S. Bierman (Doug) and James A. Hoppenstedt (Jim) filed a complaint against Brenda L. Benjamin and BD Construction, Inc./Kearney (BD), alleging various causes of action: to require Brenda to sell shares of BD, to remove Brenda as an officer and director of BD, for an accounting, and for damages based upon breach of fiduciary duty. Following a grant of partial summary judgment in favor of Doug and Jim and a trial, the court set a value for BD, found that Brenda had breached her fiduciary duty to BD, removed Brenda as an officer and director of BD, and awarded Brenda $1,703,197.79. We reverse, and remand for further proceedings.

## BACKGROUND

BD is a construction company operated out of Kearney, Nebraska. At all times relevant to this litigation, BD had three shareholders: Mark W. Benjamin, who was a director and president and owned 59 percent of the shares; Doug, a director who owned 25 percent of the shares; and Jim, also a director, who owned 16 percent of the shares. The three entered into a buy-sell agreement on September 29, 2009, which provided for the sale and purchase of BD shares in a variety of scenarios.

Mark died on April 14, 2015. On May 26, Brenda was appointed to serve as president of BD, but Doug ran the company on a day-to-day basis. On April 20, 2016, Brenda terminated the employment of Doug and Jim. On May 6, Doug and Jim filed this lawsuit against Brenda and BD, initially seeking specific performance of the buy-sell agreement, an accounting, and the appointment of new officers and directors. Doug and Jim also sought damages for wrongful termination and breach of fiduciary duty.

Prior to trial, Doug and Jim filed a motion for summary judgment seeking a finding that the buy-sell agreement was enforceable. The district court granted summary judgment to Doug and Jim on that issue. The court reserved for trial the issue of the value of BD. Following trial, the district court valued BD, as of the date of Mark's death, at $3.8 million, with Mark's 59-percent interest valued at $2.242 million. In addition, the district court found that Brenda breached her fiduciary duty to BD and its shareholders in various ways. In accordance with the preceding findings, the district court awarded Brenda $1,703,197.79 for Mark's interest in BD. Brenda appeals, and Doug and Jim cross-appeal.

## ASSIGNMENTS OF ERROR

On appeal, Brenda alleges that the district court erred in (1) granting partial summary judgment finding the buy-sell agreement enforceable; (2) finding that she acted in bad faith,

finding that she breached her fiduciary duties, and in removing her as a director and officer of BD; (3) not admitting testimony from Brenda's advisors regarding the good faith and reasonableness of the process utilized to set bonuses and of Brenda's review of applicable industry standards; (4) setting the value of Mark's shares, both because April 14, 2015, the date of Mark's death, bore no relationship to the value of BD and because life insurance proceeds received by BD on Mark's life were excluded; and (5) allowing a certified public accountant to testify regarding bonuses and compensation, because he was not qualified as an expert.

On cross-appeal, Doug and Jim assign that the district court erred in (1) reducing their damage award by 59 percent as to the distribution of bonuses, (2) failing to reinstate the debt or receivables owed to BD by Brenda and the estate, and (3) not awarding them attorney fees.

## STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[1] In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[2]

[3] The interpretation of a contract and whether the contract is ambiguous are questions of law subject to independent review.[3]

---

[1] *Merrick v. Fischer, Rounds & Assocs., ante* p. 230, 939 N.W.2d 795 (2020).

[2] *Id.*

[3] *DH-1, LLC v. City of Falls City, ante* p. 23, 938 N.W.2d 319 (2020).

[4,5] Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.[4] An appellate court may, at its option, notice plain error.[5]

## ANALYSIS

Brenda assigns that the district court erred when it granted partial summary judgment in favor of Doug and Jim on the issue of the enforceability of the buy-sell agreement.

As relevant to this issue, article III of the buy-sell agreement states that "in the event of the death of a Shareholder, and only in such event, the Corporation will be required and shall, to the fullest extent permitted by applicable law, purchase the shares of stock of the Deceased Shareholder from the legal representative of the Deceased Shareholder's estate."

Article V purports to deal with the determination of purchase price in the event of the sale of shares. Section 5.1 applies where the shares are for sale pursuant to an offer of the disposing shareholder. Section 5.2 purports to apply to "Other Operative Events" and provides:

> In the case of all other Operative Events *other than the Death of Shareholder*, the price per share of the shares of stock shall be paid by the Corporation and/or the Non-disposing Shareholders. The price per share shall be the price which is agreed to annually by the Shareholders and attached hereto as an Exhibit. In the event of the failure to agree for two (2) consecutive years, the parties agree that the Corporation will employ an independent third party to appraise the business and determine the price per

---

[4] *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018).

[5] *Id.*

share, with appraisal costs split between the Corporation
and the Shareholders as a group.

(Emphasis supplied.)

The district court found that the agreement was unambiguous, reasoning that the exclusion for "the death of a shareholder" noted in the first sentence did not modify the pricing method set forth in the second sentence. For that reason, the court concluded that the pricing method set forth in the second sentence should be used to calculate the share price for all operative events.

[6-10] In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.[6] A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.[7] When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them.[8] The fact that the parties have suggested opposing meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.[9] A contract found to be ambiguous presents a question of fact and permits the consideration of extrinsic evidence to determine the meaning of the contract.[10]

None of the parties have challenged the district court's underlying determination that the buy-sell agreement was unambiguous, though they disagree as to the meaning of the agreement. But an appellate court may, at its option, notice plain error.[11]

---

[6] *Wintroub v. Nationstar Mortgage*, 303 Neb. 15, 927 N.W.2d 19 (2019).

[7] *Id.*

[8] *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015).

[9] *Id.*

[10] *David Fiala, Ltd. v. Harrison*, 290 Neb. 418, 860 N.W.2d 391 (2015).

[11] *Mays v. Midnite Dreams, supra* note 4.

We do so here because we find the buy-sell agreement to be clearly ambiguous on the question of what pricing mechanism, if any, is set forth by the document.

In this case, we find the buy-sell agreement to be susceptible to multiple meanings. Most notably, section 3.1 provides that in the event of the death of a shareholder, BD is required, "[s]ubject to the terms and conditions as set forth herein," to purchase those shares from the estate of the deceased shareholder. While the agreement provides for the procedure to be followed for such a purchase via section 6.3, it does not include any explicit provision with language setting forth the price to be paid in that event. Article V purports to deal with the "Determination of Purchase Price," but has language that could be read as excluding "the death of a shareholder" from that particular pricing mechanism.

While section 3.1 states that the agreement sets forth certain "terms and conditions" to follow to effectuate such a purchase, there is an interpretation of the agreement that would not provide all necessary "terms and conditions." In addition, we observe that language in the agreement allowing for the purchase of life insurance policies to facilitate the purchase of the shares as required by the agreement could arguably be read as providing a pricing mechanism for the purchase of shares in the event of the death of a shareholder.

In short, it is not possible to determine the meaning of the buy-sell agreement as applied to the death of a shareholder. We find plain error in the district court's determination that the buy-sell agreement was unambiguous. The interpretation of an ambiguous contract presents an issue of fact not appropriate for determination on summary judgment. The consideration of extrinsic evidence is necessary to determine the meaning of the buy-sell agreement.

Accordingly, we find merit to Brenda's assignment of error asserting that the grant of partial summary judgment was in error. We reverse the district court's grant of summary

judgment and remand the cause to the district court for further proceedings. Because we find that the grant of summary judgment was error, we decline to reach the remainder of Brenda's assignments of error or to reach Doug and Jim's cross-appeal.

## CONCLUSION

The district court's grant of summary judgment is reversed and the cause remanded for further proceedings.

Reversed and remanded for
further proceedings.