Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/13/2021 08:08 AM CDT

Melissa Kier and the Fraternal Order
of Police, Lodge #10, appellants, v.
County of Hall, Nebraska,
et al., appellees.

___ N.W.2d ___

Filed June 22, 2021.    No. A-20-550.

1. **Administrative Law: Appeal and Error.** In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision to determine whether the agency acted within its jurisdiction and whether sufficient, relevant evidence supports the decision of the agency.
2. **Administrative Law: Evidence.** The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it.
3. **Administrative Law: Appeal and Error.** The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact.
4. **Administrative Law: Judgments: Words and Phrases.** An administrative agency decision must not be arbitrary and capricious. Agency action is "arbitrary and capricious" if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion.
5. **Contracts.** In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.
6. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.
7. **Contracts.** When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their

plain and ordinary meaning as an ordinary or reasonable person would understand them.

8.  ____. The fact that the parties have suggested opposing meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous.

9.  **Contracts: Evidence.** A contract found to be ambiguous presents a question of fact and permits the consideration of extrinsic evidence to determine the meaning of the contract.

10. **Contracts.** A contract must receive a reasonable construction and must be construed as a whole.

11. ____. If possible, effect must be given to every part of a contract.

12. ____. A court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include.

13. **Contracts: Intent.** A court should avoid interpreting contract provisions in a manner that leads to unreasonable or absurd results that are obviously inconsistent with the parties' intent.

14. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Hall County: JOHN H. MARSH, Judge. Affirmed.

Thomas P. McCarty and Gary L. Young, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellants.

Ashley H. Connell and Pamela J. Bourne, of Woods Aitken, L.L.P., for appellees.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

This case involves an employment relationship between the Hall County Sheriff's Department (the Department) and Melissa Kier, a deputy sheriff. Kier and the Fraternal Order of Police, Lodge #10 (FOP #10), filed a grievance concerning the application of shift-bidding provisions in each applicable collective bargaining agreement (CBA) that governed the employment relationship. This dispute centers on whether

the Hall County Sheriff's Department Merit Commission (Merit Commission) properly interpreted and applied provisions of each CBA, as well as the Merit Commission's own regulations. Kier and FOP #10 appeal from the order of the district court for Hall County, which affirmed the decision of the Merit Commission. We affirm.

## BACKGROUND

### CBA's

Kier is employed as a deputy sheriff with the Department. FOP #10 is a "[l]abor organization" as defined in Neb. Rev. Stat. § 48-801(7) (Cum. Supp. 2020) and is the collective bargaining representative for the Department. Rick Conrad, the elected sheriff of Hall County, is the personnel director for the Department.

The Department and FOP #10 entered into a CBA, effective from July 1, 2016, to June 20, 2019, which controlled the wages and employment conditions of deputy sheriffs employed by the Department. Subsequently, the Department and FOP #10 entered an amendment to the CBA, which added a "shift bidding" provision to the agreement. When the 2016-19 CBA expired, the Department and FOP #10 entered into a second agreement, with terms that were identical to the prior agreement. The second CBA was to be effective from July 1, 2019, to June 30, 2021.

The shift-bidding provision of the CBA's provided that, except for certain excludable positions within the Department, "all bargaining unit position work shifts and days off, will be open for bid on an annual basis" and "[e]mployees will be allowed to select work shifts and days off . . . based on seniority." Under this provision, the Department was required to annually create and approve a schedule containing available work shifts, and FOP #10 would then conduct a bid for the shifts according to seniority. Following the completion of the bidding process, FOP #10 was to return the results of the bid to the Department for implementation.

In addition to the shift-bidding provision, the CBA's provided that the elected sheriff would retain certain management rights over the Department. Article III of each CBA stated that "[a]ll management rights, functions, responsibilities, and authority not specifically limited by the express terms of this Agreement are retained by the Sheriff and remain exclusively within the rights of the Sheriff." The CBA's enumerated specific rights retained by management, including "[t]he right to direct and arrange work forces[,] including the right to hire, examine, classify, promote, train, transfer, assign, and retain employees[.]" The CBA's provided that if the sheriff transfers an employee from one shift to another, at least 30 days' advance notice must be provided.

Kier began working for the Department in December 2014 as a deputy sheriff. The terms and provisions of the CBA's applied to Kier's employment. At all relevant times, there were three potential shifts in the Department: day shift (6 a.m. to 4 p.m.), swing shift (2 p.m. to 12 a.m.), and night shift (8 p.m. to 6 a.m.).

### 2018 ANNUAL SHIFT BID AND
### KIER'S PERFORMANCE ISSUES

Kier began working the night shift in August 2018, following the annual shift bid. Prior to that date, she had worked the day shift. The record shows that after Kier began to work the night shift, the Department documented several incidents where Kier was counseled for "unacceptable or unsatisfactory work performance, which [had] resulted in two letters of reprimand." These incidents are summarized below.

On August 9, 2018, Kier handled an assault investigation, during which she failed to interview all the victims and witnesses, submitted only one report in narrative form, and failed to issue any citations or referrals, contrary to the Department's protocol. On August 15, the Department counseled Kier for a continued failure to complete and submit "workload tables" in a timely manner. Workload tables are the Department's

payroll records and are used to track the number of hours worked by each deputy sheriff.

In mid-August, Kier taught a "Basic Life Support CPR" class. This class is a prerequisite for deputy sheriffs hoping to receive certification from the Nebraska Law Enforcement Training Center. However, the class taught by Kier did not meet the proper requirements, which caused qualification issues for the deputies who had taken the class. On August 27, 2018, Kier failed to turn in the Department's monthly police quiz on time.

On October 9, 2018, the Department counseled Kier for mistakes made on an accident investigation report. Specifically, Kier had listed the wrong person as the injured party. On October 15, Kier was again counseled for failing to submit documentation in a timely manner.

On January 10, 2019, the Department counseled Kier for her failure to properly fill out reports on numerous occasions. On one occasion, Kier failed to stop a driver suspected of a weapons offense because she failed to properly turn on her police vehicle's emergency lights. On January 19, the Department counseled Kier due to an incomplete report that contained several errors.

On February 11, 2019, the Department issued Kier a formal letter of reprimand "due to [her] repeated errors in [her] workload table." On February 14, Kier was again counseled for incomplete workload tables.

On February 20, 2019, Kier was counseled after the Department found several items in her work mailbox that she had left unaddressed for several weeks. These items included the following: (1) documents related to an ongoing investigation that Kier had failed to log as evidence, although they had been in her possession since December 2018; (2) a citation from May 2018 in which Kier had failed to correct errors; (3) an out-of-county arrest warrant that had been in Kier's mailbox for over 3 months that she had failed to serve; and (4) a document that Kier had failed to timely return to the Nebraska Department of Motor Vehicles.

On March 1, 2019, Kier received another letter of reprimand for her ongoing performance issues and continued failure to complete and submit workload tables in a timely manner. On March 9, Kier failed to adequately complete an accident report, and she failed to submit a corrected report when asked to do so by supervisors.

On April 9, 2019, Conrad and other supervisors within the Department met with Kier to discuss her work performance issues. Kier acknowledged her deficiencies and explained that she was having "issues sleeping" and other "personal issues" that were affecting her job performance.

On May 7, 2019, the Department counseled Kier regarding her unsatisfactory performance related to a missing person investigation. The record shows that Kier interviewed all potential suspects collectively, rather than individually, and that she received pertinent information regarding the location of the missing person but failed to act upon it.

On May 14, 2019, Conrad and other supervisors again met with Kier. They notified Kier that due to her poor performance since starting to work the night shift in August 2018, the Department had decided it was necessary to transfer her to the day shift. Conrad explained to Kier that she would be able to "serve the [D]epartment more effectively," since "[d]ayshift work assignments are more structured and typically have more supervision." Kier did not file a grievance following the May 2019 decision to transfer her to the day shift.

2019 ANNUAL SHIFT BID AND REBID

In June 2019, Kier and other deputy sheriffs working for the Department submitted their shift bids in accordance with the amended 2016-19 CBA. Kier submitted a bid for the swing shift. At the end of June 2019, a deputy sheriff left the Department, which required a rebidding of shifts.

On June 7, 2019, Conrad sent Kier a letter regarding the annual shift bid, which stated that the Department had transferred Kier to the day shift following the May 14 meeting

and that it had been brought to the Department's attention that Kier placed a bid on the swing shift, which "would go against the decision made on May 14, 2019." Conrad then requested that in the rebidding process, Kier "limit [her] scope to the available day shift positions."

Conrad instructed FOP #10 that, following the departure of the deputy sheriff, a rebid should be conducted according to seniority. However, he advised FOP #10 that Kier should be placed in a day shift slot, regardless of seniority.

### Merit Commission Decision and Appeal

Kier and FOP #10 timely grieved Conrad's June 7, 2019, letter, which limited Kier's scope in the rebidding process to "available day shifts only." Kier and FOP #10 argued that Conrad's decision violated the shift-bidding provisions of the CBA's because it prevented her from bidding based on her seniority for a swing shift or a night shift. Kier and FOP #10 requested that all deputy sheriffs be immediately permitted to resubmit their shift bids based on seniority, and they further requested that Conrad's letter be rescinded and removed from Kier's personnel file.

No satisfactory settlement was reached between the parties during any step of the formal grievance process. Kier and FOP #10 then timely filed a grievance appeal with the Merit Commission in accordance with the terms of the CBA's and with Neb. Rev. Stat. § 23-1734 (Reissue 2012). The Merit Commission held a hearing on the grievance on November 14, 2019. At the hearing, the Merit Commission received exhibits and listened to sworn testimony. Following the hearing, the parties submitted written closing arguments.

The Merit Commission issued a written decision on December 4, 2019. The decision found that (1) the Merit Commission had jurisdiction to hear the grievance appeal pursuant to § 23-1734(2) and pursuant to the grievance procedures set forth in the CBA's; (2) the Department and Conrad did not have the authority to restrict Kier from shift bidding based

upon seniority; (3) Conrad's letter to Kier should be removed from Kier's personnel file; and (4) the Department's employees, including Kier, should be immediately permitted to rebid for their shifts.

In addition to these findings, the Merit Commission took notice of article IX of the regulations of the Merit Commission, which stated:

> *Paragraph 2* - The Sheriff may, in the Sheriff's discretion, transfer classified personnel from one division to another. A transfer from one division to another shall not be considered as a promotion or demotion. The Sheriff may, at his discretion, transfer classified personnel from one shift to another.

> *Paragraph 3* - A transfer from one shift to another shift shall not be considered a promotion or demotion.

In its written decision, the Merit Commission went on to explain:

> Accordingly, the Sheriff of Hall County retains the right to transfer Deputies from one shift to another according to the Merit Commission regulations. The Sheriff and the FOP #10 on their own cannot ignore the Merit Commission rules and regulations in the collective bargaining process. If a different result was desired, the Sheriff or the FOP #10 could have requested a change in the Merit Commission rules and regulations for consideration by the Merit Commission after following the proper procedure for amending such rules . . . .

Therefore, although the Merit Commission found that Conrad and the Department could not restrict Kier from shift bidding based upon seniority, it determined that Conrad's management rights allowed him to transfer Kier from one shift to another following the completion of the bidding process.

On December 23, 2019, Kier and FOP #10 filed a petition in error in the district court for Hall County, seeking review of the Merit Commission's written decision. The petition in error alleged that the Merit Commission erred in finding that

Conrad had discretion to transfer deputy sheriffs from one shift to another. Kier and FOP #10 alleged that the Merit Commission had erred because it (1) had improperly taken judicial notice of its own regulations, (2) had improperly interpreted and applied the relevant provisions in the regulations, (3) lacked statutory authority to adopt and apply the regulations, (4) had exceeded its statutory authority, and (5) failed to properly interpret or apply the provisions of the CBA's. Kier and FOP #10 further alleged that the Merit Commission's written decision was not supported by sufficient evidence and/or was arbitrary and capricious.

The district court held a hearing on the petition in error and issued a written order on July 9, 2020, rejecting all of Kier and FOP #10's assignments of error. The district court held that the Merit Commission had acted within its jurisdiction and statutory authority, that its written decision was supported by sufficient evidence, and that the decision was neither arbitrary nor capricious. The district court further found that even without consideration of the Merit Commission's regulations, the CBA's themselves gave the sheriff the right to "direct and arrange workforces including the right to transfer employees." For these reasons, the district court affirmed the decision of the Merit Commission.

Kier and FOP #10 now appeal the order of the district court.

## ASSIGNMENTS OF ERROR

Kier and FOP #10 assign, restated and reordered, that the district court erred in (1) holding that the management rights provisions in the CBA's take precedence over the shift-bidding provisions and (2) holding that the Merit Commission's regulations take precedence over the shift-bidding provisions.

## STANDARD OF REVIEW

[1-3] In reviewing an administrative agency decision on a petition in error, both the district court and the appellate court review the decision to determine whether the agency acted within its jurisdiction and whether sufficient, relevant

evidence supports the decision of the agency. *Douglas County v. Archie*, 295 Neb. 674, 891 N.W.2d 93 (2017). The evidence is sufficient, as a matter of law, if an administrative tribunal could reasonably find the facts as it did on the basis of the testimony and exhibits contained in the record before it. *Id.* The reviewing court in an error proceeding is restricted to the record before the administrative agency and does not reweigh evidence or make independent findings of fact. *Id.*

[4] An administrative agency decision must not be arbitrary and capricious. *Id.* Agency action is "arbitrary and capricious" if it is taken in disregard of the facts or circumstances of the case, without some basis which would lead a reasonable and honest person to the same conclusion. *Id.*

## ANALYSIS

### Management Rights Provisions

Kier and FOP #10 assign that the district court erred when it found that the management rights provisions in article III of the CBA's gave Conrad the discretion to arrange workforces and transfer employees, notwithstanding the results of an annual shift bid. With respect to this issue, the district court found that the terms of the CBA's "prohibit[ed] the sheriff from restricting or preventing a deputy from shift bidding according to the applicable [CBA]," but that the sheriff "retain[ed] the right to transfer deputies from one shift to another." Kier and FOP #10 argue that in reaching this conclusion, the district court erred as a matter of law in failing to apply the plain language of the CBA's to this case.

Kier and FOP #10 argue that the Merit Commission and district court erred in overlooking certain portions of the CBA's that they contend limit the sheriff's management rights, including the right to transfer deputy sheriffs from one shift to another. They argue that when the CBA's are properly read as a whole, the plain language of the CBA's prohibited Conrad from "disregarding an employee's chosen shift due to work performance issues." Brief for appellants at 24.

[5-9] In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Bierman v. Benjamin*, 305 Neb. 860, 943 N.W.2d 269 (2020). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id.* When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. *Id.* The fact that the parties have suggested opposing meanings of a disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Id.* A contract found to be ambiguous presents a question of fact and permits the consideration of extrinsic evidence to determine the meaning of the contract. *Id.*

[10-13] In addition, a contract must receive a reasonable construction and must be construed as a whole. *Equestrian Ridge v. Equestrian Ridge Estates II*, 308 Neb. 128, 953 N.W.2d 16 (2021). And, if possible, effect must be given to every part of a contract. *Id.* A court is not free to rewrite a contract or to speculate as to terms of the contract which the parties have not seen fit to include. *Id.* A court should avoid interpreting contract provisions in a manner that leads to unreasonable or absurd results that are obviously inconsistent with the parties' intent. *Id.*

In this case, Kier and FOP #10 do not deny that article III of each CBA reserved certain management rights to Conrad as personnel director of the Department. They acknowledge the provision which states that "[a]ll management rights, functions, responsibilities, and authority not specifically limited by the express terms of this Agreement are retained by the Sheriff and remain exclusively within the rights of the Sheriff."

However, Kier and FOP #10 suggest that Conrad's management rights, specifically his right to transfer deputy sheriffs from one shift to another, were limited by other terms of the CBA's. In support, Kier and FOP #10 point to portions of

the CBA's that provide that during "an emergency as declared by the Sheriff," the sheriff shall have discretion to establish shifts, hours, and duties; and also to a different provision related to temporary reassignment of a deputy sheriff to cover for vacation and sick leave. Finally, Kier and FOP #10 reference a provision permitting two employees to trade their work schedules. According to Kier and FOP #10's suggested interpretation, these three circumstances are the only ones in which the Department may disregard a deputy sheriff's chosen shift bid and transfer them to a different shift.

Reading the CBA's as a whole, we do not find Kier and FOP #10's argument to be persuasive. Nothing about the three provisions referenced above indicates that they are the sole circumstances under which the sheriff may transfer a deputy sheriff to a new shift. Nor does the language of the three provisions referenced by Kier and FOP #10 specifically eliminate or limit the sheriff's right to transfer employees from shift to shift, which is explicitly enumerated in article III of the CBA's.

To the contrary, the CBA's demonstrate that the parties specifically contemplated the sheriff's ability to transfer a deputy sheriff to a new shift. Not only do the CBA's grant the sheriff the right to transfer employees, the CBA's additionally prescribe a procedure by which such a transfer must be effected. The CBA's state that "[t]he Department shall not change the work schedule, work shift, job or assignment of an employee . . . without providing such employees at least thirty (30) days advance notice of the change of work schedule, work shift, or job." We note that in this case, Conrad did provide Kier the requisite 30 days' notice via a written letter, which Kier acknowledged with her signature. We further note that Kier never instituted grievance proceedings following this notice of transfer; rather, proceedings in this case were originally focused on whether Conrad had the right to prevent Kier from shift bidding entirely—a question which was resolved in Kier and FOP #10's favor.

Although Kier and FOP #10 correctly point out that some provisions of the CBA's make reference to particular scenarios under which the sheriff may transfer an employee, nothing about those provisions suggests that they are the only circumstances under which a transfer may be made. Rather, they apply to special circumstances (e.g., emergencies) when the typical transfer procedures, including 30 days' advance notice, might not be practical. We do not read the provisions related to emergencies, temporary reassignment, or voluntary shift trades to be inconsistent with the sheriff's general right to transfer employees from shift to shift. Indeed, under the interpretation of the CBA's advocated by Kier and FOP #10, the management rights provisions in article III would be effectively mooted.

To ignore provisions of the CBA's would be contrary to the purpose of the parties and contrary to Nebraska precedent. A contract must be construed as a whole, and effect must be given to every part of a contract if possible. See *Equestrian Ridge v. Equestrian Ridge Estates II*, 308 Neb. 128, 953 N.W.2d 16 (2021). It would be nonsensical for this court to ignore a provision which grants the sheriff the right to transfer employees from shift to shift and instead hold that the same provision is without effect simply because other sections of the CBA's also concern changes to employee work schedules. Both the Merit Commission and the district court gave every provision in the CBA's full effect in determining that Conrad had no right to interfere with the annual shift-bidding process, but also finding that Conrad retained all management rights that were not explicitly limited within the contract.

We conclude that the district court correctly applied the plain language of the CBA's to this case. Under article III of the CBA's, the sheriff retains certain management rights, including the right to transfer deputy sheriffs from one shift to another; the CBA's further prescribe a procedure by which the sheriff may effect such a transfer. No other provision in the CBA's specifically limits this right. This argument fails.

### Merit Commission Regulations

Kier and FOP #10 assign that the district court erred in holding that the Merit Commission acted within its jurisdiction in interpreting and applying its regulations to this case and denying the grievance. They argue that this is error for three reasons: (1) the shift-bidding provisions do not violate a statutory directive and are therefore valid, (2) the Merit Commission's regulations did not bar the Department from contracting with respect to the shift-bidding provisions, and (3) the Merit Commission's regulations exceed the Commission's statutory rulemaking authority and are, therefore, invalid.

[14] However, because we have already determined that the district court was correct in its conclusion that the terms of the CBA's themselves gave Conrad the right to transfer Kier from shift to shift, we need not consider this assignment of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *AVG Partners I v. Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020).

### CONCLUSION

We conclude that the district court did not err in affirming the decision of the Merit Commission which ordered the Department to conduct an immediate shift rebid and to permit Kier to fully participate in the process, but which concluded that Conrad retained the right to transfer deputy sheriffs from shift to shift. We conclude that the terms of the CBA's entered into by the parties gave Conrad the power to transfer his employees from shift to shift. For that reason, we do not reach the issue of whether the regulations of the Merit Commission likewise authorized the sheriff to make such transfers. The judgment of the district court is affirmed.

Affirmed.